William POLLARD, Plaintiff-Appellant,

v.

**FEDERAL BUREAU OF INVESTIGA-
TION, Defendant-Appellee.**

No. 81–3621.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 6, 1982.

Decided May 12, 1983.

Stephen K. Strong, Seattle, Wash., for plaintiff-appellant.

Eloise E. Davies, Washington, D.C., for defendant-appellee.

Before WRIGHT, TANG and CANBY, Circuit Judges.

TANG, Circuit Judge:

Pollard appeals the district court's grant of summary judgment allowing the Federal Bureau of Investigation (FBI) to withhold documents Pollard sought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 et seq. On appeal, Pollard raises several issues concerning the procedures used in the district court. We affirm. Because difficult questions are presented by some of the procedures authorized under the Freedom of Information Act, a few guidelines may aid district courts in future FOIA cases.

When Pollard sought documents relating to him from the FBI, the FBI acknowledged its possession of six documents, totalling 21 pages, containing reference to Pollard. The FBI disclosed only three pages to Pollard, basing its refusal to disclose the remainder on the statutory exemptions of 5 U.S.C. § 552(b)(1) (national defense or foreign policy secrecy), and § 552(b)(7)(C) & (D) (unwarranted invasion of personal privacy and confidential source secrecy). After losing his administrative appeal, Pollard then filed an action in district court, alleging that the requested materials had been unlawfully withheld.

The FBI moved for summary judgment. It filed affidavits of two agents explaining in general terms the nature of each document and stating reasons for the exemption from disclosure. Pollard opposed the motion and sought discovery to obtain further information about the withheld materials. Pollard sought to depose Special Agent Spingler, one of the FBI's affiants, but the court granted the FBI's request for a protective order which was extended to the entire FBI. Pollard also sought, and was refused, in camera review of the withheld documents.

The court granted summary judgment to the FBI with respect to Document 5, withheld under § 552(b)(7)(C) & (D), based on the FBI affidavits alone. The court however denied the FBI's motion as to the documents withheld under 5 U.S.C. § 552(b)(1). The court found the affidavits to be insufficient for the court to determine whether the national security exemption had been properly claimed.

In its order denying the FBI summary judgment on the remaining documents, the district court granted the plaintiff's motion to require its in camera review of the remaining documents. In addition, the court stated that the "government may submit in camera affidavits to explain the relevance of the (b)(1) exemption to the documents under review."

The district court made the final decision to exempt the documents from disclosure after considering, in camera, the FBI affidavit, the documents themselves, and certain oral statements by FBI Special Agent Spingler. Pollard's attorney was not permitted to be present for this review. The court described the documents as follows:

Plaintiff's name appeared in these documents not as a target of any FBI national security investigation, but as a result of an intelligence source(s) reporting on the activities of individual(s) and/or group(s) which were and are the targets of a national security investigation. The targets reported on included their activities in attempting to influence and to manipulate legitimate organizations. The plaintiff's name appears as a person present at some United Farm Workers meetings, a non-targeted legitimate organization.

On filing his notice of appeal, Pollard designated Spingler's *in camera* statements as part of the record. When he found that no court reporter had taken down these statements, Pollard requested a statement of the proceedings from the district court. The court denied the request, saying that Spingler had merely authenticated and described the documents at issue and that his statements were irrelevant to appellate review.

Pollard raises the following issues: (1) whether the *in camera, ex parte* nature of the proceedings violates common law and provisions of the FOIA; (2) whether the district court abused its discretion by refusing to permit discovery; (3) whether the district court erred in holding that there were no disclosable portions of Document 5; and (4) whether the district court erred in holding several of the documents exempt from disclosure under the national defense and foreign policy exception.

## I.

Pollard contends that the *ex parte* nature of the *in camera* proceedings offends common law tradition, due process, and the FOIA. Specifically, Pollard objects to (1) the district court's solicitation of *in camera* FBI affidavits, without giving a reason for secrecy; (2) the district court's refusal to allow Pollard's counsel to view the FBI's *in camera* affidavits as well as the withheld documents without first finding that exceptional circumstances existed, and (3) the district court's consideration of the *ex parte* statements of Special Agent Spingler with-

out having made the statements part of the record.

We note first that the statute itself provides for *in camera* inspection of the documents sought to be disclosed. 5 U.S.C. § 552(a)(4)(B). We note also that Pollard himself requested *in camera* review of the documents; it is the *ex parte* nature of the review to which he objects. Pollard contends that adversary procedures are essential to decision making and that courts routinely allow counsel to participate in *in camera* proceedings under protective orders. *In camera* proceedings, particularly in FOIA cases involving classified documents, are usually non-adversarial, with the party who is seeking the documents denied even this limited access to the documents he seeks to obtain. *See Hayden v. National Security Agency/Central Security Service, et al.*, 608 F.2d 1381, 1385 (D.C.Cir.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980).

Indeed, it is the *ex parte,* non-adversarial nature of *in camera* review that has prompted courts to proceed with caution in endorsing *in camera* review of documents in FOIA cases. *See, e.g., Ingle v. Department of Justice,* 698 F.2d 259, 264 (6th Cir.1983) (*in camera* review of documents a secondary tool of FOIA enforcement, after the preferred method of government testimony or affidavits showing why an exemption from disclosure should be granted); *Stein v. Department of Justice & FBI,* 662 F.2d 1245, 1254 (7th Cir.1981) (court acknowledged *in camera* review to be an important aspect of FOIA determinations, but "matter of conjecture whether the court performs any real judicial function when it reviews classified documents *in camera*"); *Vaughn v. Rosen,* 484 F.2d 820, 825 (D.C. Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974) (*in camera* review "may be very burdensome, and is necessarily conducted without benefit of criticism and illumination by a party with the actual interest in forcing disclosure").

▪ Although courts have commented on the inherent problems, the practice of *in camera, ex parte* review remains appropri-

1154

ate in certain FOIA cases, provided the preferred alternative to *in camera* review—government testimony and detailed affidavits—has first failed to provide a sufficient basis for a decision. In view of the district court's conclusion that the public affidavits provided an insufficient ground to make a decision, the *in camera* review of the documents and the non-public affidavit was not error. *Church of Scientology of California v. United States Department of the Army,* 611 F.2d 738, 743 (9th Cir.1979). Although the district court was free to do so, it was not necessary that additional reasons be recited for excluding Pollard's attorney from the *in camera* proceedings, particularly where the claimed exemption involved is the national defense or foreign policy secrecy exemption. *See Hayden,* 608 F.2d at 1385–86.

█ If the government's initial attempts to provide justification for its claimed exemption fail to provide a sufficient basis for decision, the district court may require the government to submit more detailed public affidavits before resorting to *in camera* review of the documents themselves and/or *in camera* affidavits. By doing so, the district court will insure that the record made is "as complete a public record as is possible," *Phillippi v. Central Intelligence Agency,* 546 F.2d 1009, 1013 (D.C.Cir.1976).

Pollard argues that the district court committed reversible error in taking *in camera* testimony from FBI Agent Spingler because it was not recorded and thus not available for review.

█ No reversible error was committed here. With hindsight, we agree with Pollard that the wiser course would have been to record any oral communication between the agent and the court. The district court's final order stated that in addition to reviewing the documents and the *in camera* affidavit, "*in camera* testimony was taken from Special Agent Clifford M. Spingler of the FBI." Upon motion of Pollard for a statement of the *in camera* proceedings, the district court declined, stating:

While a record of even informal communications in a matter involving sensitive

documents might be desirable, the court cannot say it is imperative. Here no such record was made, and the court declines plaintiff's motion to prepare a statement based on its recollection at this date.

The court, however, noted that "no 'testimony' in the evidentiary sense was received of Mr. Spingler or anyone else," and that any contrary implication in the court's earlier order should be disregarded. The court described Spingler's statements as *brief* and consisting of "authenticating and describing the documents." Having reviewed the documents themselves, as well as the public and the *in camera* affidavits and the district court's orders, we are confident that Pollard was in no way prejudiced by the failure to record the oral statements of Agent Spingler.

In the future, however, any authentication of documents submitted *in camera* should be made in writing and included as a part of the record. Any *ex parte* oral communications made to the court should be recorded and made available for appellate review.

## II.

█ Pollard argues that the district court abused its discretion in refusing to permit him to depose Agent Spingler. Many of the questions suggested by Pollard in his Brief in Support of Plaintiff's Motion to Compel Discovery were directed to the contents of the documents.

The record shows that the court denied Pollard's efforts to depose Spingler concerning the contents of the withheld documents because that was "precisely what defendants maintain is exempt from disclosure to plaintiff pursuant to the FOIA." There was no abuse of discretion here. *See Military Audit Project v. Casey,* 656 F.2d 724, 750–51 (D.C.Cir.1981); *Goland v. CIA,* 607 F.2d 339, 352 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980).

## III.

█ On the basis of the FBI's public affidavits, and without *in camera* examination,

the district court granted the government's motion for summary judgment as to Document 5. That document was withheld pursuant to 5 U.S.C. § 552(b)(7)(C) and (D).

Pollard contends that the court failed to review Document 5 to determine if disclosable portions exist because the court had a misconception of the record. The trial court described the document as consisting solely "of lists of names that are exempt from disclosure."

Agent Spingler's affidavit included a detailed description of the withheld document. According to this description, the document consists of a cover page indicating that the document is the work of a confidential source, a page consisting entirely of names of people and organizations with their file numbers, and a page consisting entirely of names of people and organizations and addresses.

5 U.S.C. § 552(b)(7)(C) exempts records whose release would "constitute an unwarranted invasion of personal privacy" and 5 U.S.C. § 552(b)(7)(D) exempts records whose release would "disclose the identity of a confidential source," or, under circumstances that are met here, "information furnished only by the confidential source."

The district court determined on the basis of the affidavit that the document met the threshold requirement of 7(C), found no public interest in disclosure to outweigh the privacy interests of the persons listed therein, and ruled the exemption applicable.

In addition, the court found the document to be exempt under (b)(7)(D). Since the affidavit indicates that the information in Document 5 was furnished by a confidential source and would tend to reveal his identity, the document is exempted entirely by 7(D). There is thus no merit to Pollard's characterization of the court's exemption of Document 5 without *in camera* review as reversible error.

### IV.

Pollard also contends that the district court erred in holding documents 1, 2, 3, 4 and 6 exempt from disclosure

under the national defense and foreign policy exception, § 552(b)(1). Our review of the record, including the documents in issue and the *in camera* affidavit, convinces us that the district court had an adequate factual basis upon which to make its decision, and that its decision that the documents were exempt under subsection (b)(1) was not clearly erroneous. *See Church of Scientology of California v. United States Department of the Army,* 611 F.2d at 743.

The grant of summary judgment is AFFIRMED.