SOUTHAM NEWS, Plaintiff,

v.

U.S. IMMIGRATION AND NATURALI-
ZATION SERVICE, et al., Defendants.

Civ. A. No. 85–2721.

United States District Court,
District of Columbia.

Sept. 29, 1987.

Memorandum and Order Nov. 9, 1987.

James H. Lesar, Washington, D.C., for plaintiff.

Robert E.L. Eaton, Jr., Asst. U.S. Atty., Washington, D.C., for defendants.

### MEMORANDUM

HAROLD H. GREENE, District Judge.

Plaintiff Southam News, a Canadian news service, filed this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking records from the Immigration and Naturalization Service ("INS"), the Department of Justice, the Department of State, the Central Intelligence Agency ("CIA"), and the Federal Bureau of Investigation ("FBI") pertaining to the administration of certain provisions of the Immigration and Nationality Act of 1952 ("McCarran Act"), which authorizes

the exclusion of aliens from the United States on political grounds, and to Farley Mowat, a well-known Canadian author who was excluded from entering the United States in 1985 pursuant to those provisions. After plaintiff filed this suit, defendants released to plaintiff some of the documents being sought. Plaintiff asserts that additional responsive documents have been improperly withheld and that some documents have not been located due to inadequate searches.

This case is now before the Court on defendants' joint motion for summary judgment and plaintiff's motion for partial summary judgment and for an order compelling further searches. This Memorandum addresses these motions in an interrelated fashion as they raise overlapping issues.

## I

### FOIA Exemptions

#### A. Exemption (b)(1)

 Exemption (b)(1) of the FOIA protects from disclosure records that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and ... are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). A document is protected from disclosure under this exemption if it has properly been classified pursuant to both the procedural and substantive criteria contained in the applicable Executive order. *Lesar v. United States Department of Justice*, 636 F.2d 472, 483 (D.C.Cir.1980). *See also Weissmann v. CIA*, 565 F.2d 692, 697 (D.C.Cir.1977). Given a reasonable degree of specificity in the agency's supporting affidavits and absent evidence of bad faith, an agency's affidavit asserting national security interests requiring classification is entitled to a high degree of deference. *Halperin v. CIA*, 629 F.2d 144, 148 (D.C.Cir.1980).

The motions filed by the parties dispute whether certain documents withheld by the INS, the FBI, and Department of Justice properly fall within exemption (b)(1).

#### 1. *INS*

The INS has withheld two two-page documents pursuant to this exemption on the basis that they contain information given by a foreign government in confidence and implicate national security interests.[1] *See* Declaration of Paul W. Schmidt. These documents were classified "secret" by a foreign government. Plaintiff claims that these documents have not satisfied the procedural requirements for proper classification or the substantive requirements for the designation of "secret."

 Contrary to plaintiff's assertions, these documents have been properly classified within the meaning of Executive Order 12356. Section 1.5(d) of that order provides that "[f]oreign government information shall either retain its original classification or be assigned a United States classification that shall ensure a degree of protection at least equivalent to that required by the entity that furnished the information." Specific identification or markings are not required under that section. The two documents at issue were classified and labelled "secret" by a foreign government, and the procedural requirements for classification set forth in section 1.5(d) of Executive Order 12356 have thus been satisfied.

 Plaintiff argues, however, that since the date of classification is not provided on the requested documents and since the propriety of classification must be assessed under the Executive order in force at the time of classification, *see Lesar*, 636 F.2d at 480, it is impossible to determine whether the procedural requirements of the applicable Executive order were satisfied because it is impossible to determine the ap-

---

1. These two documents are two letters. One letter, consisting of two pages, is from a foreign government official to Mr. J.A. Mongiello, Immigration Attache, United States Embassy, Ottawa, Ontario, dated July 22, 1968. The other letter, consisting of two pages, is from Vern R. Dahl, Assistant Liaison Officer, RCMP, to Paul Murphy, Deputy Assistant Commissioner, Inspections, United States Immigration and Naturalization Service, dated February 6, 1984.

plicable Executive order. This argument is specious.

The oldest of the two requested documents is dated July 22, 1968. Every Executive order governing national security classification since that time contains a section that is either identical or substantially identical to section 1.5(d) of Executive Order 12356. The Court concludes that the two documents were properly classified under any and all of the possibly applicable Executive orders since their origination.

 In addition to satisfying the applicable procedural criteria, the documents were classified in conformity with the substantive requirements of Executive Order 12356. The INS withheld the two documents because they contain information originating from a foreign government confidential source. Affidavit of John J. Ingham at ¶ 12; *accord* Schmidt Declaration at ¶¶ 4–7. Requiring the INS to release information obtained from a foreign government source in confidence, particularly where such information is deemed secret by that government, would undermine future attempts by the United States to gain information from a foreign government source pursuant to a promise of confidentiality. Under such circumstances, the value of such a promise would of course be tenuous at best. Disclosure of such information would also have the effect of inhibiting diplomatic exchanges which are essential to obtain information necessary for the conduct of United States foreign relations. In any event, Executive Order 12356 specifically provides that the release of foreign government information is presumed to cause damage to the national security. Executive Order 12356, § 1.3(a)(3).

Accordingly, the Court will grant the INS' motion for summary judgment with respect to its exemption (b)(1) claims.

## 2. *FBI*

The FBI has withheld a number of pages of material on the ground that the information falls within the foreign government information and intelligence activities, sources and methods categories of Executive Order 12356, § 1.3(a).

 The affidavits submitted by the FBI indicate that the procedural requirements of Executive Order 12356 have been satisfied as well as the substantive requirements. Proper procedural classification is evidenced by the following: each document was marked and stamped with the proper classification level, the identity of the original classification authority where appropriate, and the date or event for declassification or other appropriate motion, Executive Order 12356, § 1.5(a)(1), (4); the portion of each document that was classified was clearly marked; the limitations on classification specified in Executive Order 12356, § 1.6, were adhered to; the declassification policies set forth in Executive Order 12356, § 3.1, were followed; and all reasonably segregable portions of documents that did not require protection under Executive Order 12356 were declassified. Declaration of Sherry L. Davis at 5.

The affidavits, which are entitled to a high degree of deference, also establish that the documents were classified in accordance with the substantive criteria set forth in the applicable Executive order. These affidavits state that the information withheld pertains to or was provided by a foreign government, or that this country furnished such information to a foreign government and that it involves intelligence activities or sources. Davis Declaration at 14.

As with respect to the INS documents, *supra*, some of this information was given by a foreign government source in confidence and, for the reasons stated above, disclosure of such information would harm the national security. Disclosure of information concerning intelligence activities could damage the national security by confirming the existence of a particular intelligence operation or by revealing investigative activities, targets, or priorities. The conclusion that disclosure of the information withheld by the FBI could cause danger to the national security is buttressed by the presumption of danger to the national security from such disclosure set forth in

Executive Order 12356, § 1.3(a)(3).[2]

The Court will therefore grant the FBI's motion for summary judgment with respect to its claims made pursuant to exemption (b)(1).

### 3. *Department of Justice*

The Department of Justice withheld a portion of one document and all of another on the basis that the information contained therein "directly relates to the foreign relations or activities of the United States." Declaration of John N. Richardson, Jr., at ¶ 10. Plaintiff does not specifically oppose the Department of Justice's claim that these documents fall within exemption (b)(1). The Court, consequently, will grant the Department's motion for summary judgment in this respect.

### B. *Exemption (b)(5)*

■ Exemption (b)(5) protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption has been construed to exempt those documents normally privileged in the civil discovery context. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 1515–16, 44 L.Ed.2d 29 (1975). Here, too, the Department of Justice has invoked the deliberative process privilege encompassed within this exemption to justify nondisclosure of portions of one documents and all of another. Declaration of Mirian M. Nisbet at ¶¶ 21–22.

■ The general purpose of the deliberative process privilege is to "prevent injury to the quality of agency decisions." *NLRB,* 421 U.S. at 151, 95 S.Ct. at 1516. This privilege is applicable only if two requirements have been satisfied: (1) the communication must be "antecedent to the adoption of an agency policy," *Jordan v. Department of Justice,* 591 F.2d 753, 774 (D.C.Cir.1978) (*en banc*); and (2) the communication must be "a direct part of the

deliberative process in that it makes recommendations or expresses opinions on legal or policy matters," *Vaughn v. Rosen,* 523 F.2d 1136, 1143–44 (D.C.Cir.1975).

■ The documents withheld by the Department of Justice are both Office of Legal Counsel ("OLC") opinion letters. One document, referred to as "Document # 9" by the Department, is a "five-page opinion written by the Assistant Attorney General of OLC for the Attorney General, ... which discusses legal questions regarding the criteria used to evaluate visa applications made by a certain class of individuals...." Nisbet Declaration at ¶ 21.[3] It was "generated in the course of formulating policies and positions that were being considered with regard to this visa matter ...." *Id.* This document evinces recommendations and deliberations "comprising part of a process by which governmental decisions and policies are formulated," *NLRB,* 421 U.S. at 150, 95 S.Ct. at 1516, and as such, its release would likely "stifle honest and frank communications within the agency." *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980). Accordingly, it falls within the ambit of exemption (b)(5).

■ The second document, referred to as "Document # 10" by the Department, is an undated draft OLC opinion on the same topic as Document # 9. Document # 10, at the time of its transmission to the Attorney General, was being circulated to the Department of State, the FBI, and the INS for their comments. This document, then, was predecisional and related to a particular deliberative process. Thus, nondisclosure is justified by exemption (b)(5).

### C. *Exemption (b)(7)(A)*

■ Exemption (b)(7)(A) permits nondisclosure of "investigatory records compiled for law enforcement purposes" to the extent that such production would "interfere with enforcement proceedings." 5

---

**2.** The FBI relies on exemption (b)(7)(D) to protect against disclosure of this information. Since the information falls within the ambit of exemption (b)(1), it is unnecessary to determine the applicability of exemption (b)(7)(D).

**3.** Portions of this document which consisted of purely factual matters were released to the plaintiff.

U.S.C. § 552(b)(7)(A). The enforcement proceedings can be prospective, *see, e.g., Ehringhaus v. FTC,* 525 F.Supp. 21, 22–23 (D.D.C.1980), or pending, *see, e.g., NLRB v. Robbins Tire and Rubber Co.,* 437 U.S. 214, 236, 98 S.Ct. 2311, 2324, 57 L.Ed.2d 159 (1978). In addition, where the record, although not currently involved in an investigation, could lead to a prospective law enforcement proceeding, this exemption is applicable. *See National Public Radio v. Bell,* 431 F.Supp. 509, 514–15 (D.D.C.1977). In determining whether the standard in exemption (b)(7)(A) has been met, the Court must weigh the strong presumption in favor of disclosure under FOIA against the likelihood that release would substantially harm such proceedings. *NLRB,* 437 U.S. at 236, 98 S.Ct. at 2324.

■■■ The INS claims exemption (b)(7)(A) to protect from disclosure several pages from the "Service Lookout Book" ("SLOB") on which are listed the names of Canadian citizens.[4] The SLOB is an "investigation and law enforcement tool that contains the names of violators, alleged violators, and suspected violators of the criminal and civil provisions of statutes enforced by INS." Affidavit of Russell A. Powell at ¶ 10.

Disclosure of the several pages in the SLOB at issue clearly could prejudice the enforcement program carried out by the INS, as well as other law enforcement agencies, as the SLOB assists INS officers who discharge their duty to ensure the exclusion of inadmissible aliens. While it is unclear whether enforcement proceedings involving the nondisclosed names are currently pending, the SLOB at a minimum pertains to prospective enforcement proceedings involving the nondisclosed names. *See* Powell Affidavit at ¶ 12. The likelihood that disclosure would hamper such law enforcement efforts outweighs the presumption in favor of disclosure.[5] Nondisclosure, then, is proper pursuant to exemption (b)(7)(A).

4. The INS refers to these pages as "Document # 8."

5. The INS also invokes exemption (b)(7)(C) as a bar to disclosure of Document # 8. Since ex-

### D. *Exemption (b)(7)(C)*

■■■ Exemption (b)(7)(C) protects from disclosure investigatory records compiled for law enforcement purposes to the extent that production of those records would "constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Those who fall within the ambit of this exemption include persons who may have been of "investigative interest" by the FBI, *see, e.g., Fund for Constitutional Government v. National Archives,* 656 F.2d 856, 861–66 (D.C.Cir.1981), as well as federal, state and local law enforcement personnel to whom reference may be made in investigative records, *see, e.g., Lesar,* 636 F.2d at 487–88. Similar to exemption (b)(7)(A), this exemption involves a balancing of the public interest in disclosure against the right of privacy.

The Department of Justice, FBI, and INS assert that various documents or portions thereof are exempt from disclosure pursuant to this provision.

### 1. *INS*

■■■ The INS has invoked exemption (b)(7)(C) to justify nondisclosure of one page of the SLOB, referred to as "Document # 1," which lists names and personal identifiers of "individuals who warrant removal" from that book. Powell Affidavit at ¶ 12. Release of names that have been listed in a book that functions as an investigatory tool, containing names of "violators, alleged violators, and suspected violators of the criminal and civil provisions of statutes enforced by the INS" would result in derogatory inferences about and possible embarrassment to those individuals. Moreover, the public's right to know names of individuals found not to be excludable on political grounds is not great, and certainly that right is outweighed by the individuals' right to privacy.

Document # 1, therefore, falls within the ambit of exemption (b)(7)(C), and the Court

emption (b)(7)(A) permits nondisclosure, it is unnecessary to address the applicability of exemption (b)(7)(C).

will grant the INS' motion for summary judgment to that extent.

## 2. FBI

The FBI withheld certain information in several documents on the basis of exemption (b)(7)(C). This information consists of the names of and identifying data concerning FBI Special Agents and clerical personnel responsible for the conduct or supervision of certain investigative activities, the identities of and information concerning third parties only mentioned in connection with the subject of investigation, and the names and identifying information of other federal government employees.

Disclosure of the identities of third parties and FBI Special Agents associated with certain investigative activities clearly could expose those persons identified to unnecessary harrassment, danger or embarrassment. The likelihood of the disruption of those individuals' personal lives indicates that the balance of public and private interests tips in favor of disclosure.

However, nondisclosure of the identities of clerical personnel or other federal government employees who handled administrative tasks related to official investigations cannot be predicated on exemption (b)(7)(C). The concern postulated by the FBI that release of those identities would subject those persons to "harrassing inquiries for unauthorized access to ... information" does not constitute the unwarranted invasion of privacy that this exemption was designed to protect against.

The Court will therefore grant plaintiff's motion for partial summary judgment and deny the FBI's motion for summary judgment to the extent that they relate to the identities of clerical personnel or other federal government employees referred to above, and it will deny plaintiff's motion and grant the FBI's motion regarding this exemption in all other respects.

## 3. Department of Justice

In four separate documents, the Department of Justice has withheld the identities of two FBI Special Agents "who were involved in discussion of matters relating to the interpretation and enforcement of various sections of the Immigration and Nationality Act" pursuant to exemption (b)(7)(C).[6] *See* Nisbet Declaration at ¶ 23. The Department of Justice asserts that nondisclosure is necessary to protect these agents from "harrassment by affected parties who may have developed animosity toward [them] ... for certain decisions." Nisbet Declaration at ¶ 23.

The basis for withholding this information is substantially similar to that pertaining to the names and identities of FBI Special Agents withheld by the FBI. The documents withheld by the Department of Justice are investigative records compiled for law enforcement purposes as they were generated in the course of determining how the government's law enforcement efforts should be conducted with regard to the visa applications of certain persons affiliated with organizations proscribed under the McCarran Act. Nisbet Declaration at ¶ 23. Disclosure of the identities withheld on these documents could expose these agents to unnecessary harrassment. In addition, the public benefits to such disclosure are outweighed by the agents' right to privacy.

## E. Exemption (b)(7)(D)

Exemption (b)(7)(D) protects information contained in investigatory records to the extent that release of that information would disclose the identity of a confidential source, and in the case of records compiled in the course of a criminal investigation, the confidential information furnished by a confidential source. 5 U.S.C. § 552(b)(7)(D). The informants' names and addresses are protected, *see, e.g., Cuccaro v. Secretary of Labor,* 562 F.Supp. 724, 725 (W.D.Pa.1983), as is information that would "tend to reveal" a source's identity. *Pollard v. FBI,* 705 F.2d 1151, 1155 (9th Cir. 1983).[7]

---

**6.** The Department of Justice also claims that this information falls within exemption (b)(6). While it appears at first glance that that exemption may be applicable, it is unnecessary to address that issue because nondisclosure is proper under exemption (b)(7)(C).

**7.** While an express promise of confidentiality satisfies the requirements of exemption

■ The INS has asserted this exemption to justify nondisclosure of seven pages of a twelve-page document that originated with a foreign government confidential source. It claims that disclosure of this information "might tend to disclose the identity of the confidential source as the law enforcement agency that investigated any identified organization or individual." Ingham Affidavit at ¶ 13.

While the information withheld may contain identities of confidential sources, the affidavits submitted by the INS do not indicate that the documents that contain this information are investigative records compiled for law enforcement purposes within the meaning of exemption (b)(7)(D). The INS describes the documents withheld pursuant to this exemption as an article from a Canadian organization, a newsletter, a list of members of a political organization, and a bulletin of a political organization. Clearly, these documents were not compiled for law enforcement purposes. Thus, exemption (b)(7)(D) does not justify their nondisclosure. Accordingly, the Court will deny the FBI's motion for summary judgment in this respect, and grant plaintiff's motion for partial summary judgment.

## II

### *Adequacy of Search*

### A. *Department of State*

The Department of State moves for summary judgment on the ground of lack of subject matter jurisdiction, alleging that either no responsive documents could be located or that all such documents were released to plaintiff. Plaintiff opposes that motion and requests an order compelling a search for documents responsive to Items One and Four through Seven on the ground that the Department of State did not conduct an adequate search for those documents.

■ Subject matter jurisdiction over a claim for declaratory or injunctive relief under FOIA ceases to exist when all records responsive to the FOIA request have been released. *Debold v. Stimson,* 735 F.2d 1037, 1040 (7th Cir.1984); *Crooker v. United States Department of State,* 628 F.2d 9, 10 (D.C.Cir.1980). In order to establish that no responsive records have been improperly withheld, defendants must demonstrate that each relevant document was produced, is unidentifiable, or is exempt from release. *National Cable Television Ass'n, Inc. v. FCC,* 479 F.2d 183, 186 (D.C.Cir.1973). In the present situation, to meet this burden, the Department of State must demonstrate that it has conducted a search reasonably calculated to locate all responsive material. *McGehee v. CIA,* 697 F.2d 1095, 1101 (D.C.Cir.1983). *See Weisburg v. United States Department of Justice,* 705 F.2d 1344, 1351 (D.C. Cir.1983). Examination of the Department of State's response indicates that that search was insufficient.

Plaintiff claims, and the evidence supports this contention, that there are indications that the Department of State has not released records that are responsive to Item One. Item One sought the following documents:

[a]ll regulations, guidelines, memoranda or directives pertaining to the interpretation and/or implementation of section 212(a)(27–a)(29)) of the McCarran Act.

The Department of State responded to that request by conducting a search of the Office of Visa Services, restricting that search to records pertaining to Mowat. In addition, the Department of State stated that "the general rules and procedures pertaining to visas" are published in the Foreign Affairs Manual and the Code of Federal Regulations. *See* Declaration of Frank M. Machek.

The insufficiency of this response is indicated by the fact that the Department of Justice has indicated that it referred two Office of Legal Counsel ("OLC") doc-

(b)(7)(D), such a promise is not necessary under the law: the requirement of confidentiality is also satisfied where the informant provided information "under circumstances from which

[an assurance of confidentiality] could be reasonably inferred." *See, e.g., Radowich v. United States Attorney,* 658 F.2d 957, 960 (4th Cir.1981).

uments to the Department of State, one of which is responsive to plaintiff's request. *See* Declaration of Miriam M. Nisbet, ¶¶ 11, 13, 22. One of these documents, dated August 8, 1978, is a "Memorandum for the Attorney General" referring to "a dispute of long standing" between the FBI and the Department of State regarding "the criteria applied by consular officials" to a narrow class of visa applicants." *See* Nisbet Declaration, ¶ 9. As plaintiff contends, this reference suggests that the Department of State, as well as the FBI, may have several documents regarding this dispute which are responsive to plaintiff's request set forth in Item One.

In footnote number one of this document, an undated Department of State legal memorandum is cited which was transmitted to the OLC and which sets forth the Department of State's views on this dispute. *Id.* State has not provided either the document from the OLC or its memorandum cited in footnote one.

Although in its motion the Department of State does not even discuss or describe the search it conducted, it does speculate in its opposition to plaintiff's motion that, "because of differences in various records disposition schedules," merely because another agency has a Department of State memorandum, the Department of State does not necessarily have a copy of its own memorandum.

This argument does not justify the Department of State's failure to conduct a search; it is at best a post hoc rationalization for the Department of State's failure to conduct a search. Plaintiff's motion for an order compelling a search for documents responsive to the request set forth in Item One, will therefore be granted.

Items Four through Seven of plaintiff's request to the Department of State seek the following:

4. All records pertaining to the denial of entry into the United States of any Canadian citizen under Sections 212(a)(27)–(a)(29) of the McCarran Act.

5. All applications for a waiver pursuant to § 212(d)(3)(A) of the Immigration and Nationality Act made by, for, or on behalf of Canadian citizens.

6. All records recommending that excludability under § 212(a)(28) of the McCarran Act be waived for a Canadian citizen.

7. All records pertaining to attempts by the Secretary of State to demonstrate to the Speaker of the House and the Chairman of the Senate Foreign Relations Committee that a Canadian citizen should be excluded under § 212(a)(28) of the McCarran Act.

The Department of State attempts to justify its failure to conduct a search for those items on the grounds that they ask for the calculation of statistical information, and on the basis that it does not keep records on some of the matters requested by plaintiff. These explanations are not sufficient to support a wholesale refusal to search for responsive documents. Clearly, Items Four through Seven do not solely seek statistical data, and it logically can be inferred that the Department of State does keep records on some of the matters requested. Thus, with respect to Items Four through Seven, plaintiff's motion to compel a search will be granted.

### B. *CIA*

The CIA alleges in its motion to dismiss, and supports with affidavits that, after conducting a reasonable search, it could not locate any responsive documents. Plaintiff has not refuted this contention in any of its papers. Accordingly, the CIA's motion to dismiss will be granted.

### C. *Department of Justice*

Plaintiff claims that the Department of Justice and the FBI should be ordered to conduct another search for responsive documents on the ground that ten responsive documents were found while the Department of Justice was processing an unrelated FOIA request. Eight of these responsive documents possessed the identifier "INS–McGovern Amendment." Plaintiff also points to the fact that the Department of Justice has not produced the aforementioned letter from the Department of State to the Office of Legal Counsel which

was cited in the "Memorandum for the Attorney General" dated August 23, 1978.

 Failure to find any or some of these responsive documents clearly indicates that the Department of Justice's search could not have been conducted in a manner reasonably calculated to locate responsive documents. The identifier on eight of the responsive documents found as a result of the processing of an unrelated FOIA request indicates an overwhelming likelihood that documents responsive to plaintiff's request may be located in that file. The Department of Justice's contention that it did not search that file because plaintiff's request characterized an item as the "McGovern Amendment" constitutes pretext at best. It is conceivable, then, that other files that may contain responsive documents have not been found. Furthermore, the footnote in the "Memorandum to the Attorney General" strongly suggests that responsive documents remain to be located. Thus, plaintiff's motion to order another search will be granted with respect to the Department of Justice.

### D. *FBI*

Plaintiff's general allegations supporting its motion to order the FBI to conduct another search are conclusory and without any factual foundation. Plaintiff does note, though, that the footnote in the August 23, 1978 "Memorandum to the Attorney General" refers to a memorandum from the Director of the FBI to Robert L. Kendi, Acting Director, Interdepartmental Committee on Internal Security, dated January 10, 1978, and that this document has not been furnished. This information does not provide any basis for a broad search, however, and the Court will order the FBI to conduct a search only for the January 10, 1978 memorandum.

### E. *INS*

Plaintiff claims that the INS has not provided all materials responsive to Items Two and Three in its supplemental request dated June 21, 1985. While it appears that the INS adequately responded to Item Two, seeking records pertaining to Mo-

wat's exclusion for the United States, the INS did not respond in any way relevant to Item Three, requesting records pertaining to the placement of Mowat's name in the SLOB. The INS has not disputed plaintiff's characterization of the facts. The Court, therefore, will grant plaintiff's motion to order the INS to conduct a search for documents responsive to Item Three.

### III

### *Fee Waiver Request*

Plaintiff's motion for partial summary judgment contends that the FBI has improperly denied its request for a waiver of search fees and copying costs. Plaintiff's claim is predicated upon the fact that during the pendency of its request, made on June 24, 1985, plaintiff received a letter dated December 27, 1985 from the FBI which set forth the extensive nature of the search requested by plaintiff and the estimated cost of such a search, and which requested that plaintiff indicate its willingness to pay the estimated fees so that further action could be taken on plaintiff's search. Plaintiff asserts that this latter request constitutes a *de facto* denial of its fee waiver request, which violates the fee waiver provisions of FOIA as it fails to set forth any basis, legitimate or otherwise, for the denial. *See* 5 U.S.C. § 552(a)(4)(A).

Plaintiff's argument incorrectly represents the nature of the FBI's December 27, 1985 letter. Plaintiff accurately represents only some of the contents of that letter, and fails to mention its subsequent portions which advised plaintiff that its request for a fee waiver was then before the Fee Waiver Committee of the FBI for consideration, and that plaintiff would be advised of their determination as soon as possible. The FBI was required by regulation to notify plaintiff of the anticipated cost of the search and obtain plaintiff's agreement to pay the cost in order for plaintiff's search request to be deemed to have been received by the FBI. *See* 28 C.F.R. § 16.10(c). It is clear that, by its December 27, 1985 letter, the FBI was not denying plaintiff's fee waiver request, but

in fact was notifying plaintiff of the pendency of that request and complying with applicable regulations so that it could act on plaintiff's search request. Plaintiff's motion seeking an order requiring the FBI to grant plaintiff a fee waiver, then, must be denied.

Nevertheless, it is evident from the papers submitted on this issue that plaintiff's request to the FBI for a fee waiver has been pending for almost two years. As the FBI concedes, no action has been taken on plaintiff's request. Accordingly, unless the FBI shows cause within twenty days why the waiver of search fees and copying costs should be denied, the request will be granted.

An order consistent with the above is being issued contemporaneously herewith.

### MEMORANDUM AND ORDER

On September 29, 1987, this Court issued an order requiring the FBI to show cause why plaintiff's request for a waiver of search fees and copying costs pursuant to the Freedom of Information Act (FOIA) should be denied. In response to that Order, the FBI on October 21, 1987 and October 28, 1987 filed copies of letters to plaintiff denying the request.[1] After consideration of the basis for those denials, the Court finds that cause has not been shown why a fee waiver should not be granted. Accordingly, the Court will grant that portion of plaintiff's motion for partial summary judgment which seeks a waiver of search fees and copying costs in relation to information requested from the FBI.

Under the fee waiver provisions of the FOIA, fees are generally limited to document duplication costs when the records are sought by "a representative of the news media." 5 U.S.C. § 552(a)(4)(A)(ii)(II). There is no question that plaintiff Southam News is a member of the news media within the meaning of the statute. Nevertheless, the FBI seeks to deny waiver of fees, claiming that any dissemination of information by the plaintiff will benefit the Canadian rather than the United States public, and that therefore a fee waiver is inappropriate.

Such an interpretation does violence to the plain wording of the statute. There is no requirement in the statute that news media seeking fee waivers serve the American public exclusively, or even tangentially. Indeed, the FBI cites no law, court decision, or regulation—only the unsupported opinion of a section chief in the FBI's Records Management Division that "it is our position that ... Southam News ... must also be able to disseminate that which it has gathered so that the primary beneficiary of the disclosure is the American, rather than a foreign public." An FBI official does not have the authority to amend a law of the United States by restricting it beyond its plain terms.

Moreover, there has been no showing in this instance that the American public will not benefit from release of the information sought. It is rather presumptuous of the FBI to suggest that, merely because a certain newspaper, magazine, radio, or television station does not normally distribute information to the American but rather to the Canadian public, this information could not be of interest to persons or groups in the United States. The United States advocates throughout the world the importance of the free flow of information across international borders and the benefits to be derived therefrom; it will not do to maintain that Canadian news stories dealing with the application of American laws would not be of benefit to the American public.

The FBI also resists granting a fee waiver in this case because of the precedent this might set for requests from other news services, such as the Soviet newspaper Izvestia. The Court does not review statutes on the basis of how they might apply in hypothetical situations. The only issue before it today is whether Southam News' request was denied properly. The answer to that question is that it was not. If and

---

1. No response to the show cause order other than a notice of filing of the FBI letters to plaintiff's counsel was filed by the government.

when the question arises as to Izvestia, a publication of the Soviet government, it will at that time be considered and ruled upon by the appropriate court.

The FBI gravitates to a similar argument as a basis for denying the plaintiff's further request for a waiver of duplication fees. In addition, it notes that the documents requested "do not contribute significantly to the public's understanding of government operations and activities." It is absurd to maintain that the publication of records reflecting the application of the exclusion provisions of the McCarran Act would not significantly contribute to the public's understanding of government activities. Moreover, it is the very purpose of the FOIA to allow the *public* to decide what will aid its understanding of the government. In the absence of an exemption barring release of the information, it is not for the *agency* to make that determination.

For these reasons, the Court concludes that the FBI has insufficient grounds upon which to base its denial of plaintiff's request for a waiver of fees and copying costs, and it is this 9th day of November, 1987

ORDERED that plaintiff's motion for partial summary judgment relating to a fee waiver be and it is hereby granted; and it is further

ORDERED that the FBI shall waive fees and copying costs relating to documents and information sought by plaintiff in this proceeding.

## ORDER

In accordance with and for the reasons stated in the attached Memorandum, it is this 29th day of September, 1987

ORDERED that, with respect to exemption (b)(1) to the Freedom of Information Act, 5 U.S.C. § 552(b)(1), the motion of the defendants Immigration and Naturalization Service, the Federal Bureau of Investigation, and the Department of Justice, for summary judgment be and it is hereby granted, and plaintiff's motion for partial summary judgment and for an order com-

pelling further search with respect to that exemption be and it is hereby denied; and it is further

ORDERED that, with respect to exemption (b)(5) of the FOIA, 5 U.S.C. § 552(b)(5), the Department of Justice's motion for summary judgment be and it is hereby granted, and plaintiff's motion for partial summary judgment and for an order compelling further search be and it is hereby denied; and it is further

ORDERED that, with respect to exemption (b)(7)(A) of the FOIA, 5 U.S.C. § 552(b)(7)(A), the INS' motion for summary judgment be and it is hereby granted; and it is further

ORDERED that, with respect to exemption (b)(7)(C) of the FOIA, 5 U.S.C. § 552(b)(7)(C), the FBI's motion for summary judgment be and it is hereby granted to the extent that that the FBI may withhold the names and identifying data of the FBI Special Agents and the third parties at issue, and it is denied in all other respects, and plaintiff's motion for partial summary judgment be and it is hereby granted in part and denied in part as stated in the accompanying Memorandum; and it is further

ORDERED that, with respect to exemption (b)(7)(D) of the FOIA, 5 U.S.C. § 552(b)(7)(D), the INS' motion for summary judgment be and it is hereby denied, and the plaintiff's motion for partial summary judgment be and it is hereby granted; and it is further

ORDERED that defendants' motion to dismiss for lack of subject matter jurisdiction be and it is hereby granted with respect to the defendant Central Intelligence Agency, and it is denied with respect to the Department of State; and it is further

ORDERED that plaintiff's motion for an order compelling further search be and it is hereby granted in part and denied in part as specified in the attached Memorandum; and it is further

ORDERED that unless the FBI shows cause within twenty days why the fee waiv-

er request should be denied, such request will be granted.