MEMORANDUM OPINION AND ORDER
 

 MORGAN, District Judge.
 

 This matter comes before the Court on motion of the defendant for summary judgment. Pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (“FOIA” or “Act”), Ashton H. Pully, Jr. (“Pully” or “plaintiff”) seeks to compel the Internal Revenue Service (the “IRS” or “Service”) to turn over certain documents related to him. Jurisdiction lies with this Court pursuant to 5 U.S.C. § 552(a)(4)(B).
 

 I.
 

 Pully initially sought certain documents pertaining to him in a letter to the IRS dated July 18, 1994. In this initial request, Pully sought “any [and] all writings, memorandums, data or other written materials (either mechanically or manually produced or reproduced) pertaining to or in reference to myself, either directly or indirectly, ... which have come into your possession from October 1,1979 to date.” The IRS responded to this initial request on August 5, 1994 by noting that Puny’s request failed to (1) describe the requested documents adequately so as to allow the IRS to locate the documents, (2) state that Pully was willing to pay the statutory fees, and (3) categorize the request under penalty of perjury. Because of these shortcomings, the IRS informed Pully that his initial request did not constitute a proper FOIA request. In any event, Pully remedied
 
 *432
 
 the shortcomings of his July 18 request in an August 9, 1994 letter. In this letter, Pully requested that the IRS produce “all correspondence” between the IRS and certain agencies, divisions, and officials of the U.S. Government.
 
 [1]
 

 Having failed to receive a satisfactory response from the IRS, Pully filed an appeal with the Service on June 14, 1995. IRS officials subsequently notified Pully of a total of 1,088 pages of nonexempt material that met Pully’s FOIA request. Specifically, the Richmond District Disclosure Office found 919 diselosable pages, 49 pages of which were partially redacted. The copying fees for these documents totaled $122.85. Additionally, the Department of Justice located 169 nonexempt documents that met the criteria of Pully’s FOIA request. The copying fees for these documents totaled $22.60.
 

 During their search for the requested documents, IRS officials discovered that the Service had begun a joint civil and criminal investigation of Pully. With regard to this joint investigation, the IRS has identified an additional 5,624 pages of material that allegedly fall under various exemptions to the FOIA. The IRS has constructed a
 
 Vaughn
 
 index,
 
 see Vaughn v. Rosen,
 
 484 F.2d 820 (D.C.Cir.1973),
 
 cert. denied,
 
 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), by arranging the alleged exempted documents into 26 separate categories. The IRS has identified the specific exemptions it alleges applies to each category, along with the factual source, in the form of affidavits, supporting the claims of exemption.
 

 II.
 

 As its underlying purpose, the FOIA seeks to ensure a citizenry informed about the inner workings of its government — a goal vital to the proper functioning of a democratic society.
 
 NLRB v. Robbins Tire & Rubber Co.,
 
 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978). To achieve this purpose, the Act creates a judicially enforceable public right to disclosure of nonexempt material.
 
 EPA v. Mink,
 
 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). In an effort to give effect to Congressional intent, the courts broadly construe the FOIA and its general mandate of disclosure.
 
 See Department of State v. Ray,
 
 502 U.S. 164, 173, 112 S.Ct. 541, 547, 116 L.Ed.2d 526 (1991) (noting “the strong presumption in favor of disclosure”).
 

 Despite the Act’s general preference for disclosure, certain governmental functions, by their very nature, require nondisclosure.
 
 See, e.g., FBI v. Abramson,
 
 456 U.S. 615, 621, 102 S.Ct. 2054, 2059, 72 L.Ed.2d 376 (1982) (recognizing the government’s inherent need for nondisclosure when an FOIA request involves the “disclosure of investigatory materials which might be used in a law enforcement action”). These governmental functions, and their inherent need for nondisclosure, conflict with the underpinnings of the FOIA. Congress, therefore, delineated certain exceptions to the Act’s preference for disclosure.
 
 See
 
 5 U.S.C. 552(b). The exceptions set forth in the Act,
 
 *433
 
 however, remain exclusive, 5 U.S.C. § 552(d), and require the courts to place a narrow interpretation on their application.
 
 See Department of the Air Force v. Rose,
 
 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976). Under the FOIA, therefore, all documents in the possession of government agencies are available to members of the public, unless the documents are specifically exempted.
 
 Department of Justice v. Julian,
 
 486 U.S. 1, 8, 108 S.Ct. 1606, 1610, 100 L.Ed.2d 1 (1988). This general framework creates a workable balance between the public’s right to know and the Government’s need to avoid the indiscriminate disclosure of properly withheld information.
 
 John Doe Agency v. John Doe Corp.,
 
 493 U.S. 146, 152, 110 S.Ct. 471, 475, 107 L.Ed.2d 462 (1989).
 

 A.
 

 As with any motion for summary judgment, the Court views the underlying facts, and the inferences drawn therefrom, in the light most favorable to the nonmovant, here the plaintiff.
 
 Miller v. Department of State,
 
 779 F.2d 1378, 1382 (8th Cir.1985). In meeting its burden, the Service need not disclose the documents themselves.
 
 Stein v. Department of Justice,
 
 662 F.2d 1245, 1253 (7th Cir.1981). To do so would undermine the exemptions carved out of the FOIA by Congress.
 
 Simmons v. Department of Justice,
 
 796 F.2d 709, 710 (4th Cir.1986). Courts, therefore, may grant summary judgment based on sufficiently detailed affidavit testimony.
 
 [2]
 

 See id.
 
 at 711-12.
 

 The detail outlined by the IRS in its supporting affidavits must provide sufficient justification
 
 [3]
 
 that the claimed exemption applies to the requested document so that the requesting party may challenge the asserted exemption.
 
 Vaughn,
 
 484 F.2d at 826-28. The affidavits must accomplish the following: (1) describe the withheld documents and the justifications for nondisclosure with reasonably specific detail; (2) demonstrate that the information withheld falls logically within the claimed exemption; (3) remain uncontroverted by either contrary factual evidence in the record or by evidence of agency bad faith.
 
 Kimberlin v. Department of the Treasury,
 
 774 F.2d 204, 207-08 (7th Cir.1985);
 
 see also Young v. CIA
 
 972 F.2d 536, 538 (4th Cir. 1992) (citing
 
 Alfred A Knopf, Inc. v. Colby,
 
 509 F.2d 1362, 1367 (4th Cir.1975)).
 

 B.
 

 In addition to arranging the 5,624 documents into 26 separate categories, the IRS has placed each of these categories under four umbrella exemptions: (1) attorney-client privilege; (2) interference with law enforcement proceedings or tax administration; (3) invasion of the personal privacy of third parties; and (4) creation of an unreasonable risk of circumvention of law. The Court will review the law as it pertains to each of the claimed exemptions and will apply the legal principles to the documents that the IRS maintains fall under the exemptions.
 

 1.
 

 The IRS contends that Category 1, consisting of a one-page note reflecting legal advice from the Service’s attorneys, falls under exemption (b)(5) in the FOIA, That exemption provides that a person requesting documents under the FOIA cannot receive “inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.” 5 U.S.C. § 552(b)(5). Section 552(b)(5) of the FOIA encompasses
 
 *434
 
 claims of attorney-client privilege.
 
 White v. IRS,
 
 707 F.2d 897, 902 (6th Cir.1983);
 
 Niemeier v. Watergate Special Prosecution Force,
 
 565 F.2d 967, 974 (7th Cir.1977).
 

 The burden lies with the party invoking the privilege to demonstrate that the attorney-client relationship existed, that the communication is privileged, and that the party did not waive the privilege.
 
 United States v. Jones,
 
 696 F.2d 1069, 1072 (4th Cir.1982). Generally, the privilege itself applies to documents prepared by an attorney on behalf of a client who requested an opinion of law.
 
 Mead Data Central v. Department of the Air Force,
 
 566 F.2d 242, 253 (D.C.Cir.1977). Waiver of the privilege, however, may occur where the agency asserting it disseminates the privileged information to unauthorized individuals.
 
 Cooper v. Department of the Navy,
 
 594 F.2d 484, 487-88 (5th Cir.1979),
 
 cert. denied,
 
 444 U.S. 926, 100 S.Ct. 266, 62 L.Ed.2d 183 (1979);
 
 Jones,
 
 696 F.2d at 1072. The Willman Declaration describes the document as “a handwritten note of the auditor who was examining Mr. Pully that reflects the legal advice that the Richmond District Counsel orally gave the auditor in response to her inquiry about whether certain of Mr. Polly’s financial practices were legal.” Willman Declaration ¶ 8;
 
 see also
 
 Trice Declaration ¶ 7.
 

 The Court FINDS that this description adequately demonstrates that the information withheld falls logically within the claimed exemption.
 
 [4]
 
 Moreover, the Court FINDS that no waiver of the attorney-client privilege has occurred because the Service has maintained the confidentiality of the legal advice reflected in the note. Willman Declaration ¶8; Trice Declaration ¶7. The record fails to disclose any evidence contravening the Service’s affidavits, and no evidence exists that would suggest agency bad faith with regard to the document described in Category 1. Accordingly, the Court HOLDS that the document referred to in Category 1 falls within the ambit of the § 552(b)(5) exemption, and GRANTS the IRS’s motion for summary judgment with regard to that document.
 

 2.
 

 The IRS contends that the documents contained in Categories 2 through 12 consist of various documents obtained or created by investigators during the course of an IRS joint investigation of Pully. According to the IRS, disclosure of these documents “could reasonably be expected to interfere with law enforcement proceedings,” 5 U.S.C. § 552(b)(7)(A), or with tax administration.
 
 See
 
 5 U.S.C. § 552(b)(3) (exempting those documents “specifically exempted from disclosure by statute”); 26 U.S.C. § 6103(e)(7) (allowing for the disclosure of tax return information by certain persons “if the Secretary determines that such disclosure would not seriously impair Federal tax administration”). Pully sets forth several arguments designed to defeat the IRS’s claims of exemption for these documents. None of these arguments, however (each of which are addressed below), successfully rebuts the Service’s showing that disclosure of the requested documents “could reasonably be expected to interfere with law enforcement proceedings” or with tax administration.
 

 a.
 

 Under the (b)(7)(A) exemption, Pully maintains that “the [Government must contend that the documents it seeks to have the Court declare exempt from release
 
 would
 
 some how [sic] interfere with law enforcement proceedings.” Brief in Opposition at 13 (emphasis added). Moreover, Pully contends
 
 *435
 
 that “the [Government is required to make a particularized showing of harm or interference to the law enforcement proceedings because the Plaintiff already has access to much of the information sought to be withheld.”
 
 [5]
 
 Brief in Opposition at 14. Both of these arguments plainly misstate the law.
 

 To sustain its burden of showing documents were properly withheld under exemption in § 552(b)(7)(A), the Government must establish only that the requested documents were investigatory records compiled for law enforcement purposes, and that production
 
 “could reasonably be expected
 
 to interfere with pending enforcement proceedings.” § 552(b)(7)(A) (emphasis added). The fact that the person requesting the documents already has access to, or is already in possession of, the documents does not raise the Government’s burden. In 1986, Congress replaced the language of this section that required release of documents unless they “would interfere with law enforcement proceedings” with language allowing for nondisclosure of the documents if their release “could reasonably be expected to interfere.” As several courts have noted, this change in language has effectively broadened the scope of the information protected by this exemption.
 
 See, e.g., Curran v. Department of Justice,
 
 813 F.2d 473, 474 n. 1 (1st Cir.1987).
 

 Puny’s second argument regarding a particularized showing of harm or interference similarly misstates the law regarding the (b)(7)(A) exemption. “Congress could easily have required in so many words that the Government in each case show a particularized risk to its individual ‘enforcement proceedin[g],’ [but] it did not do so.... ”
 
 Robbins,
 
 437 U.S. at 234, 98 S.Ct. at 2323. In conjunction with this argument, Pully describes the Government’s allegations of potential interference as “talismanic incantations.” Brief in Opposition at 18. In other words, Pully argues that the Government merely has stated the “magic words” associated with the claim that release of the documents could reasonably be expected to interfere with the law enforcement proceedings. The IRS, however, has done more than Pully would like to admit.
 

 The affidavits accompanying the Service’s motion thoroughly describe the withheld documents as containing sensitive information about the IRS’s joint investigation. Willman Declaration ¶¶ 9(a)-(k); Trice Declaration ¶¶ 8(a)-(k); Sutton Declaration ¶¶ 23(a)-(j);
 
 see infra
 
 Section II.B.2.b (describing the withheld documents). The
 
 Robbins
 
 Court “concluded that Congress did not intend to prevent the federal courts from determining that, with respect to particular
 
 kinds
 
 of enforcement proceedings, disclosure of particular
 
 kinds
 
 of investigatory records while a ease is pending
 
 would
 
 generally ‘interfere with enforcement proceedings.’ ”
 
 Id.
 
 at 236, 98 S.Ct. at 2324 (emphasis added). In this regard, the Fourth Circuit has held that release of similar information prepared or collected by IRS agents “would” harm a joint civil and criminal investigation of the taxpayers.
 
 Willard v. IRS,
 
 776 F.2d 100, 103 (4th Cir.1985). The Fourth Circuit’s decision in
 
 Willard
 
 predated the amendments to § 552(b)(7)(A) outlined earlier in this Opinion and Order. As previously explained, these amendments broadened the reach of the (b)(7)(A) exemption. The Willard logic, therefore, would apply
 
 a fortiori
 
 to the facts of the dispute
 
 subjudice.
 

 b.
 

 The exemption provided in § 552(b)(3) allows the Service to withhold documents that are “specifically exempted from disclosure by statute ... provided that such statute ...
 
 *436
 
 refers to particular types of matters to be ■withheld.” The Internal Revenue Code (Title 26) specifically allows for the disclosure of return information “if the Secretary determines that such disclosure would not seriously impair Federal tax administration.” 26 U.S.C. § 6103(e)(7).
 

 Affidavit testimony clearly establishes that the requested documents were generated or collected by the IRS in its examination of Pully for potential civil tax liability and criminal tax fraud. Willman Declaration ¶¶ 9(a)-(k); Trice Declaration ¶¶ 8(a)-(k); Sutton Declaration ¶¶ 23(a) — (j). The bulk of these documents (4,685 pages) consists of the responses by various financial institutions to summonses served upon them by the Service (Categories 2 — 1). Willman Declaration ¶¶ 9(a)-(c); Trice Declaration ¶¶ 8(a)-(c). Other documents in this grouping include 513 pages of public land records and federal bankruptcy files (Category 5), 66 pages of a special agent’s third party interview notes (Category 6), 31 pages of a fraud referral report drafted by an IRS auditor (Category 7), 183 pages of an auditor’s and a special agent’s general notes regarding the Pully investigation (Category 8), four pages of a voluntarily-provided copy of a third party’s tax return (Category 9),
 
 [6]
 
 ten pages reflecting property transactions that concern Pully (Category 10), 29 pages of another agency’s records regarding certain third parties (Category 11), and 61 pages of computer printouts from the IRS’s Integrated Data Retrieval System (the “IDRS”) concerning taxpayers other than Pully (Category 12). Trice Declaration ¶¶ 8(d)-(k).
 

 Pully maintains that the IRS has failed to demonstrate that he has tampered with, or will tamper with in the future, any investigation by the IRS. Moreover, Pully avers in his affidavit that, if the IRS provides him with this requested information, he will not interfere with their investigation. Each of these contentions misses the point. Puny’s sworn statements of his future intent is of no consequence. In order to maintain that disclosure “could reasonably interfere with law enforcement proceedings,” the Service need not take into account the individual’s propensity or desire to interfere with the proceedings if the documents are disclosed. All that is required is an objective showing that interference could reasonably occur as the result of the documents’ disclosure.
 
 See
 
 5 U.S.C. § 552(b)(7)(A).
 

 The Court FINDS that the Service’s affidavits describe the withheld documents and the justifications for nondisclosure with reasonably specific detail. Moreover, the Court FINDS that the affidavits demonstrate that the information withheld falls logically within both of the claimed exemptions. Finally, the Court FINDS that the record fails to disclose any factual evidence contravening the Service’s affidavits. Accordingly, the Court HOLDS that the documents described in Categories 2 through 12 of the Service’s
 
 Vaughn
 
 index are of the nature that, if prematurely disclosed to Pully in the FOIA action, could reasonably be expected to enable Pully to interfere with law enforcement proceedings or with tax administration.
 
 See Barney v. IRS,
 
 618 F.2d 1268, 1273 (8th Cir.1980) (‘We consider that disclosure of such records as witness statements, documentary evidence, agent’s work papers and internal agency memoranda, prior to the institution of civil or criminal tax enforcement proceedings, would necessarily interfere with such proceedings by prematurely revealing the government’s case.”).
 

 The record fails to disclose any evidence contravening the Service’s affidavits, and no evidence exists that would suggest agency bad faith with regard to the documents described in Categories 2 through 12. Accordingly, the Court HOLDS that the documents referred to in these categories fall within the ambit of the (b)(3) and (b)(7)(A) exemptions, and GRANTS the IRS’s motion for summary judgment with regard to these documents.
 
 [7]
 

 
 *437
 
 3.
 

 As its third area of concern, the IRS maintains that release of the documents contained in Categories 13 through 22 would constitute an invasion of the personal privacy of third parties.
 
 See
 
 5 U.S.C. § 552(b)(7)(C).
 
 See
 
 5 U.S.C. § 552(b)(3); 26 U.S.C. § 6103(a).
 

 a.
 

 When addressing exemptions claimed under § 552(b)(7)(C), the courts have developed a balancing approach that would withhold the disclosure of documents where the potential for the harm of the individual would outweigh the likely public benefit to be had if the documents were disclosed.
 
 Rose,
 
 425 U.S. at 372-73, 96 S.Ct. at 1604-05;
 
 Deering Milliken, Inc. v. Irving,
 
 548 F.2d 1131, 1136 (4th Cir.1977). Category 13 contains five pages of personal information regarding lower level Service employees. Trice Declaration ¶ 9(b). Category 14 includes 64 pages of information that identify sources and potential sources concerning the Service’s joint investigation.
 
 Id.
 
 ¶ 9(c). Employing the balancing test recited above, the Court FINDS that whatever minimal information that the documents in Categories 13 and 14 may provide to members of the public, including Pully, that interest falls well short of outweighing the substantial private interests that each of these individuals possess in the requested information.
 

 The record fails to disclose any evidence contravening the Service’s affidavits, and no evidence exists that would suggest agency bad faith with regard to the documents described in Categories 13 and 14. Accordingly, the Court HOLDS that the documents referred to in these categories fall within the ambit of the (b)(7)(C) exemption, and GRANTS the IRS’s motion for summary judgment with regard to these documents, b.
 

 The IRS contends that the documents described in Categories 15 through 22 are specifically exempted by statute as provided in 5 U.S.C. § 552(b)(3) and 26 U.S.C. § 6103(a). The exemption provided in § 552(b)(3) allows the Service to withhold documents that are “specifically exempted from disclosure by statute ... provided that such statute ... refers to particular types of matters to be withheld.” Section 6103 of the Internal Revenue Code (Title 26) specifically refers to the “Confidentiality and disclosure of returns and return information.” 26 U.S.C. § 6103.
 
 [8]
 

 The Service’s index and the affidavit submitted in support of the claims of exemption describe the requested documents as identifying third-party taxpayers or certain of their tax information. Sutton Declaration ¶ 17. Additionally, three pages of these documents refer to a related investigation of a third-party taxpayer.
 
 Id.
 
 Release of this information would breach the confidentiality
 
 *438
 
 of taxpayer returns or individual taxpayers’ return information. Accordingly, the Court FINDS that the enabling language of § 552(b)(3) permits the IRS not to disclose this information pursuant to 26 U.S.C. § 6103(a).
 

 The record fails to disclose any evidence contravening the Service’s affidavits, and no evidence exists that would suggest agency bad faith with regard to the documents described in Categories 15 through 22. Accordingly, the Court HOLDS that the documents referred to in these categories fall within the ambit of the (b)(3) exemption, and GRANTS the IRS’s motion for summary judgment with regard to these documents.
 

 4.
 

 Finally, the IRS maintains that release of the documents contained in Categories 23 through 26 would create an unreasonable risk that Pully would circumvent the law. The FOIA allows an agency to refuse to disclose documents compiled for law enforcement purposes where their disclosure would reveal techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions, if such disclosure could reasonably be expected to risk circumvention of the law. 5 U.S.C. § 552(b)(7)(E). The Government bears the burden of proving whether disclosure of investigative procedures would give rise to a substantial likelihood that violators could evade detection by deliberately tailoring their conduct in anticipation of avenues of inquiry to be pursued by agency personnel.
 
 Malloy v. Department of Justice,
 
 457 F.Supp. 543, 545 (D.D.C.1978). In meeting this burden, the Government must show that the technique that would be disclosed under the FOIA request is a technique unknown to the general public.
 
 Id.
 

 Utilizing a statistical technique known as discriminant function scores (“DIF scores”),
 
 [9]
 
 the IRS calculates certain tolerances outside of which audits become more likely. DIF scores also enable the IRS to determine which taxpayers may face fraud investigations, and to identify the particular method of collection should be used with particular taxpayers.
 

 The sensitive nature of the DIF scores is manifest. If taxpayers obtained access to this information, they could develop techniques to avoid “flagging” the IRS computers. This would require the Service to employ more elaborate procedures to apprehend unscrupulous taxpayers. Assuming the IRS could develop such procedures in a reasonable period of time, taxpayers, in the meantime, could avoid investigation. Moreover, the same logic that would require disclosure of the DIF scores would require disclosure of the newly-developed technique, and the race to stay one step ahead of the tax-evading individuals would become perpetual.
 

 The Court FINDS that the DIF score technique employed by the IRS is a law enforcement technique that is generally unknown by the public. The record fads to disclose any evidence contravening the Service’s affidavits, and no evidence exists that would suggest agency bad faith with regard to the documents described in Categories 23 through 26. Accordingly, the Court HOLDS that the documents referred to in these categories fall within the ambit of the (b)(7)(E) exemption, and GRANTS the IRS’s motion for summary judgment with regard to these documents.
 

 III.
 

 Since the filing of the Service’s motion for summary judgment and the parties’ respective briefs, Pully filed various motions with this Court. The plaintiffs first motion seeks permission to file supplemental pleadings. The second motion asks the Court to continue the date of the trial of this matter, and to grant additional time in which the parties could conduct discovery. Finally, Puny’s third motion seeks declaratory judgment. As discussed below, the Court FINDS the second and third motions to lack merit. Accordingly, the Court DENIES each of these motions.
 

 
 *439
 
 A.
 

 Pully has filed his motion to file supplemental pleadings in an effort to bring to the Court’s attention a recent case,
 
 Tax Analysts v. IRS,
 
 1996 WL 134587 (D.D.C. March 15, 1996), that the plaintiff claims is “almost identical” to the Service’s claims that the document in Category 1 is exempted by the attorney-client privilege. The IRS objects, arguing that Pully had more than two weeks in which to discover the case before he filed his opposition to the Service’s motion for summary judgment on April 2, 1996. Alternatively, the IRS contends that
 
 Tax Analysts
 
 has no bearing on the issue before the Court. The Court GRANTS Pully’s motion to file additional pleadings, but only to the extent that Pully may have the Court consider his ease law argument.
 

 Rather than speculate as to how quickly Pully should have become aware of the
 
 Tax Analysts
 
 case, the Court concludes that the case does nothing to alter the Court’s previous analysis that found the Category 1 document to be exempt. Arising under the FOIA,
 
 Tax Analysts
 
 involved a plaintiff’s attempt to acquire documents from the IRS known as Field Service Advice Memoranda (“FSAs”). The district court defined FSAs as “memoranda ... prepared by attorneys employed in the Office of Chief Counsel ... issued in response to requests for advice, guidance and analysis on difficult or significant tax issues.”
 
 Id.
 
 at *1. Reasoning that FSAs constituted “statements of policy and interpretations adopted by the agency,”
 
 id.
 
 at *6, the court held that the attorney-client privilege did not apply so as to exempt the FSAs.
 

 The document requested by Pully does not involve a FSA. Instead, the requested documents is “a handwritten note of the auditor who was examining Mr. Pully that reflects the legal advice that the Richmond District Counsel orally gave the auditor in response to her inquiry about whether certain of Mr. Pully’s financial practices were legal.” Will-man Declaration ¶ 8;
 
 see also
 
 Trice Declaration ¶ 7. Based on this description, the document does not constitute a statement of policy and interpretation adopted by the IRS so as to defeat a claim of attorney-client privilege.
 

 B.
 

 The plaintiff’s second motion requests that the Court continue the date of the trial of this matter and allow additional time during which the parties may conduct discovery. The purported basis for this request is “newly discovered evidence.” Pully’s request for a continuance apparently arises from his misperception of the IRS’s disclosure of . the 1,088 documents discussed in Section I of this Memorandum Opinion and Order.
 

 Pully states that many of these documents “absolutely contradict” the Service’s affidavits.
 
 [10]
 
 Having received these documents from the IRS on April 8, 1996 (six days after Pully filed his Brief in Opposition), it would appear as though the plaintiff might have sufficient cause to request a continuance and additional discovery. The record, however, demonstrates that the delay in Pully’s receipt of the documents resulted from his own lack of diligence in paying the statutory fees.
 

 In a letter dated October 5, 1995, the Service notified the plaintiff of the 919 pages of nonexempt documents in its possession. In this letter, the IRS informed Pully that he could receive these documents upon its receipt of his payment. Sutton Declaration ¶ 11. Additionally, in a letter dated March 4, 1996, the Department of Justice notified Pully that it possessed 169 pages of nonexempt documents, and informed him that he would have to tender payment to receive the documents. Pully tendered payment for the nonexempt documents on or about March 21, 1996, and received the documents on April 8, 1996. The Court will not allow the plaintiff to complain of alleged prejudice to his case (i.e., late receipt of the documents) when the plaintiffs own lack of diligence gave rise to the purported prejudice.
 

 
 *440
 
 Even if the Government were to blame for Puny’s belated receipt of certain requested documents, their release does not constitute “newly discovered evidence” that would require additional discovery or a continuance of the trial. Pully appears to believe that the nature and timing of these released documents (i.e., that they are not correspondence, and that some of them are dated after his August 8, 1994 request) places a cloud over the Service’s handling of his request. Throughout this litigation, the IRS argued that Pull/s August 8, 1994 FOIA request merely sought “correspondence.” Pully has consistently disputed this characterization, claiming that his request covered all types of documents.
 

 Despite its attempt to narrow Putty's request, the Service voluntarily produced documents that fell outside of the definition of correspondence and that postdated the August 8 request.
 
 See Goland v. CIA,
 
 607 F.2d 339, 369 (D.C.Cir.1978) (explaining that an agency is required only to make reasonable efforts, and that the discovery of additional documents does not malign the agency’s efforts). If anything, the nature and timing of these released documents reveals the extent to which the Service went to respond to the plaintiff’s FOIA request. Accordingly, the Court concludes that these documents do not constitute “newly discovered evidence” that would require a continuance or additional discovery.
 

 C.
 

 Puny’s third motion seeks “declaratory judgment” regarding “the date of the FOIA request to which the Defendant should respond, and the types or description of the documents that the defendant should produce pursuant to 5 USC 552.” Pally’s attempt to seek declaratory relief in this ease does violence not only to the purpose of such an action, but also to the procedure in which a party seeks such relief. Moreover, the Court views Putty's maneuvering as little more than an ineffective attempt to circumvent the Local Rules of this Court that limit parties in the briefing of motions brought before the Court.
 
 See
 
 Local Rules of Practice for the United States District Court for the Eastern District of Virginia 10(E)(1).
 

 Rule 57 of the Federal Rules of Civil Procedure specifically states that “[t]he procedure for obtaining a declaratory judgment ... shall be in accordance with [the Federal Rules].” Thus, to obtain declaratory relief, Pully would have had to file a separate complaint, and pursue the matter as he would any other cause of action.
 
 See
 
 6A Moore’s Federal Practice ¶ 57.22[2] (Matthew Bender 1996). Pully cannot evade this requirement merely by couching his request in the form of a “motion.” Assuming a party could seek declaratory relief in the manner attempted by the plaintiff, Pully could not obtain the relief he seeks. The questions for which he seeks declaratory judgment merely constitute preliminary issues before this Court. Their resolution would fall well short of “terminating] the controversy” between the parties.
 
 See
 
 Advisoiy Committee
 
 Note to
 
 Fed. R.Civ.P. 57.
 

 IV.
 

 The Court notes that the IRS has meticulously categorized and grouped each challenged document, supporting each claimed exemption with supporting affidavit testimony. The Court accepts the credibility of the affidavits provided by the IRS, and perceives no reason to take the additional step of examining the contested documents
 
 in camera. See Young,
 
 972 F.2d at 539. Accordingly, the Court FINDS that no genuine issue of material fact exists as to the withheld documents. Moreover, upon a thorough review of the claimed exemptions and their supporting affidavits, the Court FINDS that the IRS has met the burden placed upon it to demonstrate that the requested documents are subject to the purported exemptions. Accordingly, the Court GRANTS the defendant’s motion for summary judgment, and DISMISSES this action with prejudice.
 

 The Clerk is REQUESTED to send a copy of this Opinion and Order to the plaintiff and counsel for the defendant.
 

 [1]
 

 . The parties have attempted to make the "correspondence” issue into more than it deserves. Pully contends that his July 18 letter (and subsequent clarifications) contained a broader request than his August 9 letter. Indeed, the IRS contends that Pully's August 9 letter sought only "correspondence," and that, with a few exceptions, the withheld documents do not meet the definition of that term. More specifically, the Service states that "[w]ith the exception of Category 4, and the requests for documents that are a part of Categories 5 and 11, none of the documents withheld by the Service can be described as 'correspondence.' " Brief in Support of Defendant’s Motion for Summary Judgment at 6 (hereinafter “Brief in Support at__”). As for the documents contained in Categories 5 and 11, only two pages and one page, respectively, constitute "correspondence."
 
 Id.
 

 In an apparent abundance of caution, however, the Service has expanded Pully's request beyond mere "correspondence." In its explanation of its withholding of certain documents, the IRS states that, “[a]t most, 17 pages of the 5,624 being withheld can be thought of as correspondence.” Brief in Support at 8. The Service, however, does not limit its exemption arguments to these 17 pages of what it considers "correspondence." Rather than become entangled in a definitional quagmire, the Court will assume, for purposes of this motion, that Pully’s request included documents other than correspondence. The Court, therefore, will analyze the substantive arguments concerning the exempt status of each of the requested documents.
 

 [2]
 

 . In the case
 
 sub judice,
 
 the crux of Pully’s opposition appears to challenge the exempt status of the requested documents. This merely presents the Court with argument concerning a legal issue, and does nothing to refute the factual bases upon which the Service relies to claim the various exemptions. The plaintiff's argument, therefore, supports this Court's conclusion that no genuine issue of material fact exists so as to preclude the entry of summary judgment.
 

 [3]
 

 . Because the party seeking release of documents does not have access to the documents, the FOIA places the burden upon the Service "to sustain its action” of withholding the requested documents. 5 U.S.C. § 552(a)(4)(B);
 
 see also
 
 S.Rep. No. 813, 89th Cong., 1st Sess. 8 (1965) (“Placing the burden of proof upon the agency puts the task of justifying the withholding on the only party able to explain it.”);
 
 Ethyl Corp. v. EPA,
 
 25 F.3d 1241, 1245 (4th Cir.1994) (recognizing that the agency bears the burden of sustaining its action);
 
 Spannaus v. Department of Justice,
 
 813 F.2d 1285, 1288 (4th Cir.1987) (same).
 

 [4]
 

 . In his brief in opposition, Pully argues that “the Supreme Court has recognized a distinction between predecisional documents, which are protected and post decisional documents which are not protected.” Plaintiff's Opposition to Defendant’s Motion for Summary Judgment at 10 (hereinafter "Brief in Opposition at_..”) (citing
 
 NLRB v. Sears & Roebuck & Co.,
 
 421 U.S. 132, 151-53, 95 S.Ct. 1504, 1516-18, 44 L.Ed.2d 29 (1975)). Pully appears to have misinterpreted the Service’s argument as setting forth the "deliberative process” privilege. Indeed, a great deal of overlap exists between the two privileges.
 
 Mead Data,
 
 566 F.2d at 254 n. 28. As a result, any particular document may fall under both exemptions.
 
 See id.
 
 Assuming that the deliberative process privilege does not apply so as to require the disclosure of the document, it is of no consequence because the Court concludes that the attorney-client privilege does apply, and that the Service, therefore, need not disclose the document.
 

 [5]
 

 . As for the summonses served on certain financial institutions, Willman concedes that Pully would have knowledge of their existence and scope, but release of the responses to those summonses would enable Pully "to determine the nature, direction, scope and limits of the joint investigation, the evidence secured in response to the summonses, and the Service's reliance thereon." Willman Declaration ¶ 9(a). Willman also notes that disclosure under the FOIA would allow Pully to gain earlier and greater access to the IRS’s joint investigation than he would otherwise have, and that the Government would be deprived of reciprocal discoveiy in the event of a criminal tax prosecution. Among the other concerns of potential interference, one of the most important pertains to the potential for Pully "to construct defenses and/or tamper with evidence since he would know what information has, and, by implication, has not, been collected by the Service.”
 
 Id.
 

 [6]
 

 . Pully has conceded that he is not entitled to these documents. Brief in Opposition at 7.
 

 [7]
 

 . This ruling does not foreclose the plaintiff from making an FOIA request in the future. The court in
 
 Barney
 
 noted such a contingency in the following passage:
 

 If and when enforcement proceedings are instituted the [plaintiffs] will be able to obtain access to such of this information as is discoverable through the normal pre-trial discovery channels. Moreover, once enforcement proceedings are either concluded or abandoned,
 
 *437
 
 exemption 7(A) will no longer apply to prevent disclosure, and the (plaintiffs] may seek release of the records under the FOIA at that time.
 

 Barney,
 
 618 F.2d at 1273-74.
 

 [8]
 

 . Section 6103(b), in pertinent part, defines "return” and “return information” as follows:
 

 (1) Return. The term "return" means any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.
 

 (2) Return information. The term "return information” means—
 

 (A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer’s return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense, and
 

 (B) any part of any written determination or any background file document relating to such written determination ... which is not open to public inspection under section 6110, but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer.
 

 26 U.S.C. § 6103(b).
 

 [9]
 

 . DIF scores measure how likely it is that a tax return contains substantial errors or omissions.
 

 [10]
 

 . Other than this conclusory statement, the plaintiff offers no evidence that would indicate that the Service acted in bad faith.