**Melody L. SIMMONS, Appellant,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Federal Bureau of Investigation, Appellee.**

No. 85–2127.

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1986.

Decided July 31, 1986.

Frank L. Kollman (Blum, Yumkas, Mailman, Gutman & Denick, P.A., Baltimore, Md., on brief), for appellant.

James B. Moorhead, Asst. U.S. Atty. (Catherine C. Blake, U.S. Atty., Baltimore, Md., on brief), for appellee.

Before WINTER, Chief Judge, and RUSSELL and PHILLIPS, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

Melody L. Simmons, plaintiff, appeals from the entry of summary judgment in favor of the United States Department of Justice, Federal Bureau of Investigation, defendant, in her suit seeking the disclosure of FBI documents under the Freedom of Information Act or FOIA, 5 U.S.C. § 552. Specifically, Simmons seeks disclosure of an eight-page memorandum concerning an FBI interview with former Romanian General Ion Mihai Pacepa about Romanian Orthodox Archbishop Viorel D. Trifa. When Simmons requested the document, the FBI refused disclosure under 5 U.S.C. § 552(b)(1) on the ground that the memorandum was classified. Simmons then sued the FBI for the document under the FOIA, and the FBI moved for summary judgment. Two affidavits accompanied the FBI motion. The affidavits explained the sensitivity of the requested document, which actually turned out to be two documents totalling nine pages, and the FBI provided both Simmons and the court with redacted copies of the requested documents with a key explaining in general terms why the FBI could not release each portion of the documents.

After a conference with the parties, the district court decided, under 5 U.S.C. § 552(a)(4)(B), to review the documents *in camera*. The FBI responded by providing the documents to the district court along with a twenty-six page declaration, which was classified, explaining the need for secrecy. The FBI's declaration explained that the documents were properly exempt as classified under § 552(b)(1) and also exempt under § 552(b)(3), because a federal statute required nondisclosure. After reviewing this material, the district court upheld the FBI's claim that the documents were exempt under both § 552(b)(1) and (b)(3) and granted summary judgment in favor of the FBI. Apparently for security reasons, however, the district court chose not to reveal the statute supporting the (b)(3) exemption. Arguing that the district court's decision was in error, Simmons has brought this appeal.

██ As her first argument on appeal, Simmons maintains that the district court did not develop a complete public record before making its decision and that the FBI did not carry its burden to prove that the requested documents were exempt. *See* 5 U.S.C. § 552(a)(4)(B). Although Simmons is correct that courts should strive to develop as complete as possible a public record before reaching a decision under the FOIA, *see Pollard v. FBI*, 705 F.2d 1151, 1154 (9th Cir.1983), the question of whether material is exempt under the FOIA is not well suited for adversary proceedings. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). This is because releasing the requested material for argument would often defeat the purpose of the FOIA's exemptions.

Attempting to alleviate this problem, Congress provided in the FOIA that courts should make a *de novo* review of any claimed exemption by an agency, 5 U.S.C. § 552(a)(4)(B), review documents *in cam-*

*era* if necessary, *id.,* and release any reasonably segregable non-exempt portion of a document that an agency claims is exempt. 5 U.S.C. § 552(b). Courts, moreover, have added to these safeguards by requiring agencies to submit affidavits, along with redacted documents, which explain claimed exemptions. In *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), for example, the D.C. Circuit began requiring agencies to submit explanatory indexes with redacted versions of the requested documents to explain why particular portions were exempt. In judging agency decisions and affidavits in the area of national security, however, courts have given substantial weight to the expertise of the agencies charged with determining what information the government may properly release. *Hayden v. National Sec. Agy./Cent. Sec. Serv.,* 608 F.2d 1381, 1387 (D.C.Cir.1979); *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980); S.Rep. No. 1200, 93rd Cong., 2d Sess. 12, *reprinted in* 1974 U.S.Code Cong. & Ad. News 6267, 6285, 6290.

■ In this case, the district court followed the above procedures correctly by accepting affidavits and redacted copies of the documents which explained the FBI's claimed exemptions. Unsatisfied by this evidence, the court made its own determination by viewing the requested documents and a classified FBI declaration *in camera.* After viewing this material, the district court correctly determined that the documents were exempt under § 552(b)(1) as properly classified pursuant to an Executive Order in the interests of national security. The district court also correctly determined that the documents were exempt under § 552(b)(3).[1] The district court's decision to keep the statute supporting the (b)(3) exemption secret for security reasons, moreover, was consonant with the FOIA's exemptions and was a correct decision even though Simmons could hardly respond to this claimed exemption. Of course, the district court's finding that the documents were exempt under the (b)(1) exemption is sufficient by itself to support nondisclosure. Consequently, the district court developed a sufficient record for its decision and did not err in its finding that the documents fell within the FOIA's exemptions.

Although the district court followed the correct procedures and the FBI met its burden of showing that the documents were classified and pursuant to statute could not be released, Simmons also alleges as a second argument that the district court erred because it did not allow full discovery before deciding the motion for summary judgment. After filing suit, Simmons sent extensive interrogatories to the FBI requesting information about the original and continued classification of the documents, the identities and addresses of the government officials who made the classification decision, the current address of General Pacepa, and the identities of persons the government might have shown the documents. The interrogatories also sought confirmation that the documents contained statements by General Pacepa that he had fabricated evidence for use against Archbishop Trifa in a deportation proceeding.

After receiving these interrogatories, the FBI moved for a protective order on the ground that answering these questions would defeat the purpose of the FOIA's exemptions. Simmons responded with a motion to compel discovery, and the district court decided to hold both motions in abeyance until it decided the FBI's motion for summary judgment. Entering summary judgment in favor of the FBI in August 1985, the district court ordered further discovery ended as moot. Simmons now argues, however, that by declining to compel discovery the district court did not allow her to contest fully the FBI's motion for summary judgment.

■ Although Simmons makes a persuasive argument, the district court has the discretion to limit discovery in FOIA cases

---

1. We have reviewed the requested documents and the FBI's classified declaration and find no error in the district court's decision that these materials are properly exempt.

and to enter summary judgment on the basis of agency affidavits in a proper case. *Goland v. Central Intelligence Agency,* 607 F.2d 339, 352 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed. 759 (1980). As the *Goland* court expressed the rule, "[t]he agency's affidavits, naturally, must be 'relatively detailed' and nonconclusory and must be submitted in good faith. But if these requirements are met, the district judge has discretion to forgo discovery and award summary judgment on the basis of affidavits." *Id.; see also Military Audit Project v. Casey,* 656 F.2d 724 (D.C.Cir.1981).

 In this case, the FBI's affidavits explained in detail the documents' classification and the need for secrecy, and the district court agreed with the FBI's assessment after viewing the documents *in camera.* Simmons' interrogatories, moreover, appear largely to be an attempt to avoid the FOIA's exemptions and to learn the contents of the requested documents. Consequently, the district court was correct in entering summary judgment based on FBI's affidavits and in ending further discovery.

 Finally, as her third argument, Simmons also alleges that an FBI agent named Wayne Barnes previously disclosed the requested documents. Simmons then argues that this means that the documents are in the public domain and can no longer be exempt or that at least the court should allow her to depose Barnes to determine the circumstances of the disclosure so that she can prove that the documents are no longer exempt.[2]

Although some courts have entertained the argument that disclosure voids exemption where there has been widespread public disclosure and dissemination of the sought after information, *see Founding Church of Scientology v. NSA,* 610 F.2d 824, 831–32 (D.C.Cir.1979); *Lamont v. Dept. of Justice,* 475 F.Supp. 761, 772 (S.D.N.Y.1979), where there have been less than full disclosure from an official source courts have been reluctant to release the requested information. *See Military Audit Project v. Casey,* 656 F.2d 724, 741–45 (D.C.Cir.1981); *Afshar v. Dept. of State,* 702 F.2d 1125, 1130–31 (D.C.Cir.1983). This is because release from an official source naturally confirms the accuracy of the previously leaked information and may damage the nation's standing even when unofficial parties have previously disclosed the documents. *Military Audit Project* at 741–45; *Afshar* at 1130–31.

Here, the FBI's affidavits indicate that if Barnes disclosed the documents he did not do so in an official capacity. Simmons, moreover, has produced no evidence of a widespread dissemination of the documents. Consequently, the district court properly entered summary judgment in favor of the FBI even though Barnes may have disclosed the documents. Similarly, the court also correctly denied Simmons the opportunity to depose Barnes, because even if Barnes had disclosed the documents, the FBI would still be entitled to summary judgment. As a result, Simmons' final argument, like her other two arguments, must fail. Accordingly, the judgment of the district court is

AFFIRMED.

---

**2.** Simmons also argues that Barnes' possible disclosure means that the FBI should review the documents' classified status under Executive Order No. 12356 § 1.3(d), *reprinted in* 50 U.S.C.A. § 401 note (West Supp.1986). Section 1.3(d) states that disclosed documents do not automatically become declassified, and Simmons argues that this language indicates that the government must at least re-evaluate the status of documents that officials have disclosed. Section 3.4 of the Executive Order, however, provides for mandatory review of documents for declassification, and § 3.4 does not require automatic review of disclosed documents. By implication, disclosure does not require a review of a document's classification, and so the documents at issue here remain properly classified.