**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MELINDA J. LANE,
            *Plaintiff-Appellant,*

v.

DEPARTMENT OF THE INTERIOR; GALE
A. NORTON, in her professional
capacity as Secretary of the
Interior; FRAN MAINELLA, in her
professional capacity as Director,
            *Defendants-Appellees.*

No. 06-15191

D.C. No.
CV-04-01287-NVW

OPINION

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted
November 7, 2007—San Francisco, California

Filed May 2, 2008

Before: Mary M. Schroeder, Cynthia Holcomb Hall and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Hall

4837

**COUNSEL**

Randolph B. Neal, Law Office of Randolph B. Neal, Idaho Falls, Idaho, for the plaintiff-appellant.

James C. Hair, Jr., and Mark Wenker, Assistant United States Attorneys, Phoenix Arizona, for the defendants-appellees.

---

**OPINION**

HALL, Circuit Judge:

Plaintiff Melinda Lane appeals the district court's summary judgment in favor of the United States Department of the Interior in her action for violations of the Freedom of Information Act and Privacy Act. She also appeals the district court's denial of her discovery request and motion to seal records. We affirm.

## I.   FACTS AND PROCEDURAL HISTORY

### A.   *Introduction*

This case stems from a dispute between Melinda Lane, a former park ranger, and her supervisors at the National Parks Service (NPS), a division of the Department of the Interior. Lane, who worked at the Lake Mead National Recreation Area, was promoted to a position with law enforcement duties in August of 2001, and experienced employment problems soon after. On October 21, 2001, Chief Park Ranger Dale Antonich received a letter from a citizen complaining that Lane acted unprofessionally when she stopped him for a traffic violation. Lane disputed certain aspects of the complaint, but agreed to undertake a plan to improve her skills. In March of 2002, Lane used profane language to describe some of her instructors at the Federal Law Enforcement Training Center,

and was placed on disciplinary probation as a result. A meeting was held between Lane and her supervisors to discuss concerns about her performance in June of 2002. In attendance were Antonich, William Shott (Lane's immediate supervisor), District Ranger Mary Hinson (Lane's second level supervisor), and Deputy Chief Ranger Kevin Hendricks. During the meeting, Antonich told the following story:

> I watched us build a team at [Death Valley National Park] and I had no problem going in and taking down two of the deadliest people I've ever been around. And you know, we weren't even naughty until the chief ranger lost his temper. He started being naughty. We were in a position where we thought we were gonna get killed. We were missing a third guy with a high powered rifle. It was time to go from sir will you give me this to putting a black hood on his head and putting a gun to the back of their head, and cocking back the hammer and saying now I am gonna give you one chance to tell me the truth or I am gonna kill you. That is an example of how far it can go, and you don't want to go that far.

After the meeting, Hinson noticed that Lane had a tape recorder, and informed Antonich. Antonich sent Lane an email the next day stating that any recording from the meeting should be turned in or destroyed, and threatening legal action against her if she failed to comply.

## B.   Investigation into Lane

Shortly after this meeting, another citizen filed a complaint with the NPS regarding Lane's conduct during a traffic stop. As a result, Hendricks requested that the Regional Office conduct an internal investigation into Lane's integrity. Special Agent Eric Inman conducted the investigation. He interviewed Hinson, who stated that she had viewed Lane's Official Personnel File, and noticed discrepancies in Lane's files

regarding her education. Inman then interviewed Lane, who admitted that she had not earned a college degree, contrary to the information in her file.

In total, Inman found that Lane had made twenty-four false entries on six separate employment applications. These findings led the Lake Mead Superintendent to direct Antonich to convene a Board of Inquiry to evaluate Lane. The evaluation concluded that Lane had falsified documents, and recommended revoking her law enforcement commission. The NPS Regional Director agreed and notified Lane that her commission was revoked on February 12, 2003. Lane unsuccessfully appealed this decision and resigned two months later.

*C. FOIA Request for Documents Relating to Antonich Investigation*

On November 22, 2002, Lane sent a letter to the United States Attorney General recounting her description of Antonich's story and requesting that the Department of Justice investigate Antonich. The Justice Department forwarded the letter to the Department of the Interior Office of the Inspector General, which conducted an investigation into Antonich. The results of the investigation were forwarded to NPS in July of 2003. In mid-November 2003, the NPS Regional Director concluded that the report disclosed no evidence supporting the truthfulness of the story Antonich had told at the June 11, 2002 meeting, no direct relationship between Lane's knowledge of the story and the subsequent administrative action against her, and no reason to discipline Antonich. The Chief of the NPS Labor and Employee Relations Branch reached the same conclusion.

On December 26, 2003, Lane filed a Freedom of Information Act (FOIA) request for "any and all applicable reports, responses, documents, or other information pertaining to the investigation of [Antonich]" to the Department of the Interior Office of the Inspector General and the NPS. The NPS

Regional Office stated that it did not have a copy of the report on site, but the Office of the Inspector General located the report, which included twelve attachments and numbered approximately 400 pages. On April 2, 2004, FOIA officer Sandra Evans provided Lane with a redacted copy of the investigative report as well as Attachment 1 (Lane's allegations), Attachment 3 (interview of Lane), and Attachment 4 (email to Lane directing her to destroy her recording of the June 11 meeting). Evans stated that she assumed Lane had copies of two other attachments to the report (Attachment 2, the CD containing Lane's recording of Antonich's story, and Attachment 6, Agent Inman's report on Lane) and that the seven remaining attachments were being withheld under FOIA Exemptions 6 and 7(C).[1]

Lane appealed this response. On June 23, 2004, a Department of the Interior appeals officer informed Lane that, based on a June 8, 2004 legal memorandum from the Solicitor's Office of the Department of the Interior, the information in the Antonich report had been properly withheld pursuant to FOIA Exemptions 6 and 7(C). A copy of the legal memorandum, which explained why the information had been withheld under the respective exemptions, was provided to Lane. This was the final administrative determination involving Lane's FOIA requests.

## D. Privacy Act Request for Lane's Personnel Documents

On February 12, 2004, Lane requested from Antonich "all reports and documentation concerning [her] Board of Inquiry, investigations, and separation from employment." Lane sent

---

[1]As discussed in greater detail below, Exemption 6 allows the government to withhold personnel files whose disclosure would constitute a clearly unwarranted invasion of personal privacy. Exemption 7(C) covers law enforcement records whose disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. §§ 552(b)(6); 552(b)(7)(C).

similar letters to the NPS and the Lake Mead Superintendent on March 6 and 29, 2004, requesting all of her personnel files pursuant to the Privacy Act.

FOIA Agent Holly Bundock was responsible for Lane's Privacy Act request. She conducted the search for responsive documents, and on August 30, 2004, the NPS sent Lane an itemized list of files and 577 pages of documents.[2] Lane appealed on September 19, 2004, maintaining that responsive documents existed that had not been provided to her and requesting to be informed of any destroyed files. Bundock conducted a second search, contacting persons who might have relevant documents. All responded that no additional responsive documents existed in their files, though an employee from the Federal Law Enforcement Training Center stated that the Training Center maintains files on all law enforcement commissioned rangers, including Lane, that contain receipts for guns and badges, law enforcement commissions, and training records. Neither Bundock nor any other employees knew of any destroyed documents.

## E.   This Action

Dissatisfied with the government's response to her FOIA and Privacy Act requests, Lane filed this action, asserting four claims against the government. In her first claim, Lane sought the information redacted from the Antonich report under the FOIA. The second claim sought Lane's Board of Inquiry file and other unspecified files under the Privacy Act (the "access to records" Privacy Act claim). In her third claim, Lane alleged the government violated the Privacy Act when Hinson viewed and disclosed her personnel file (the "improper access" Privacy Act claim). Last, Lane requested judicial review of the Board of Inquiry hearing concerning the revocation of her law enforcement commission.

---

[2]The delay between Lane's request and receipt of materials was due in part to disagreements between Lane and Bundock over who would be responsible for the costs of copying the documents.

The district court deferred Lane's request for discovery until after it ruled on the government's summary judgment motion. The government moved for summary judgment on all four claims, and Lane filed a cross-motion on the first and second claims. The district court granted summary judgment for the government on the first, third, and fourth counts. It denied summary judgment on the second claim pending the delivery of certain files to Lane. Several months later, satisfied that the government had provided the files, the court granted summary judgment for the defendant on that claim as well. Lane timely appealed the first three claims, as well as the district court's delay of discovery and denial of her request to seal court records containing personal information about her.

## II.   DISCUSSION

### A.   Discovery Claim

Lane argues that the district court erred when it allowed the government to move for summary judgment before granting her the opportunity to take discovery. We disagree.

[1] A district court "has wide latitude in controlling discovery, and its rulings will not be overturned in absence of a clear abuse of discretion." *White v. City of San Diego*, 605 F.2d 455, 461 (9th Cir. 1979) (internal quotations omitted). While ordinarily the discovery process grants each party access to evidence, in FOIA and Privacy Act cases discovery is limited because the underlying case revolves around the propriety of revealing certain documents. *Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991). Accordingly, in these cases courts may allow the government to move for summary judgment before the plaintiff conducts discovery. *See Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993) ("The court's denial of discovery . . . was within [its] discretion. . . . Generally, FOIA cases should be handled on motions for summary judgment . . . ."); *Nolan v. Dep't of Justice*, 973 F.2d 843, 849 (10th Cir. 1992)

("[T]he district court acted well within its discretion in deferring discovery so as to determine the propriety of the [Privacy Act] exemptions."); *Simmons v. Dep't of Justice,* 796 F.2d 709, 711-12 (4th Cir. 1986) ("[T]he district court has the discretion to limit discovery in FOIA cases and to enter summary judgment on the basis of agency affidavits . . . ."); *see also Broaddrick v. Exec. Office of the President*, 139 F. Supp. 2d 55, 63 (D.D.C. 2001) ("[D]iscovery is not typically a part of FOIA and Privacy Act cases, and whether to permit discovery is well within the sound discretion of the district court judge.") (citation omitted).

In the instant case, the court was faced with a discovery request for twenty depositions in four separate cities. The court not only found the request highly burdensome, but also noted that Lane appeared to be requesting via discovery "the very information that is the subject of the FOIA complaint."[3] The court reviewed the case law addressing discovery in FOIA and Privacy Act cases, as well as the burden the discovery would place on the government and the court, and decided to delay Lane's discovery until after it ruled on the government's summary judgment motion. However, it reassured Lane that she would have the opportunity for discovery if it was necessary for her response to the government's summary judgment motion.

**[2]** The court's delay of discovery with respect to Lane's FOIA claim and right of access Privacy Act claim was certainly within its discretion. Courts routinely delay discovery until after summary judgment in such cases, *see Miscavige*, 2 F.3d at 369, *Nolan*, 973 F.2d at 848, *Simmons,* 796 F.2d at 711-12, and this circuit has affirmed denials of discovery

---

[3]At the discovery hearing, Lane stated that the purpose of her discovery was to establish that Antonich engaged in proven misconduct, and to determine the existence of certain personnel documents not provided to her. This was the same information that she sought to uncover in the underlying FOIA and Privacy Act litigation.

where, as here, the plaintiff's requests consisted of "precisely what defendants maintain is exempt from disclosure to plaintiff pursuant to the FOIA." *Pollard v. FBI*, 705 F.2d 1151, 1154 (9th Cir. 1983).

**[3]** Lane's third claim — that Hinson violated the Privacy Act by improperly accessing her personnel file — might have initially warranted discovery. Unlike the FOIA claim or the access to records Privacy Act claim, the improper access Privacy Act claim did not revolve around the propriety of disclosing certain documents. Nonetheless, we cannot say that the district court abused its discretion on this claim either. The district court only delayed Lane's discovery until after the government filed its summary judgment motion, and Lane never requested additional discovery to respond to that motion under Fed. R. Civ. P. 56(f).**⁴** Because Lane failed to follow the proper procedures, it was within the district court's discretion to rule on the improper access claim at summary judgment as well. *See THI-Haw.*, *Inc. v. First Commerce Fin. Corp.*, 627 F.2d 991, 994 (9th Cir. 1980) ("THI's failure to move for a continuance under Rule 56(f) prevents it from complaining of the timing of summary judgment in this case. . . . The court did not err in granting the defendants' motion prior to any discovery."); *see also British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 954 (9th Cir. 1978), *cert. denied*, 440 U.S. 981 (1979) ("The airline can hardly argue at this late date that the district court abused its discretion in ruling on the summary judgment motion in light of the fact that [it] failed to pursue the procedural remedy which the Federal Rules so clearly provided.").

---

**⁴**We recognize that this court has allowed certain motions not formally denominated as Rule 56(f) requests to raise the issue of additional discovery adequately. *See Garrett v. City & County of San Francisco*, 818 F.2d 1515, 1518 (9th Cir. 1987). However, Lane's mentions of discovery in her opposition papers are insufficient. *See Brae Transp.*, *Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986) ("References in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56(f).").

## B.  FOIA Claim

Lane argues that the district court erred in holding that the government was authorized under the FOIA to withhold the redacted information in the Antonich report. We disagree, and affirm the district court's ruling that the government properly withheld the information under FOIA Exemption 7(C).

**[4]** In the Ninth Circuit, a two-step standard of review applies to summary judgment in FOIA cases. *Lion Raisins, Inc. v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1078 (9th Cir. 2004). The court first determines under a *de novo* standard whether an adequate factual basis exists to support the district court's decisions. *Id.* If an adequate factual basis exists, then the district court's conclusions of fact are reviewed for clear error, while legal rulings, including its decision that a particular exemption applies, are reviewed *de novo. Id.*; *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996); *Schiffer v. FBI*, 78 F.3d 1405, 1409 (9th Cir. 1996).

### 1.  Adequate Factual Basis

**[5]** A court may rely solely on government affidavits "so long as the affiants are knowledgeable about the information sought and the affidavits are detailed enough to allow the court to make an independent assessment of the government's claim." *Lion Raisins*, 354 F.3d at 1079. "If the affidavits contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, 'the district court need look no further.' " *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987) (quoting *Church of Scientology of Calif. v. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1979)).

**[6]** If, however, the court finds that the government affidavits are "too generalized," it may examine the disputed documents in camera to make a "first-hand determination of their exempt status." *Id.* (quoting *Church of Scientology*, 611 F.2d at 742). In camera inspection is "not a substitute for the gov-

ernment's burden of proof, and should not be resorted to lightly," due to the *ex parte* nature of the process and the potential burden placed on the court. *Church of Scientology*, 611 F.2d at 743; *Pollard*, 705 F.2d at 1153-54. However, it may be appropriate if the "preferred alternative to in camera review — government testimony and detailed affidavits — has first failed to provide a sufficient basis for a decision." *Id.* at 1154. In *Church of Scientology*, this court held that the district court's in camera viewing of the disputed documents, in combination with "somewhat conclusory" affidavits, constituted an adequate factual basis, because the "small number of documents requested, and their relative brevity, made these cases appropriate instances for exercise of the district court's inspection prerogative." 611 F.2d at 743.

[7] In this case, the government produced only one "somewhat conclusory" affidavit at summary judgment. On its own, the affidavit of FOIA Officer Sandra Evans may not constitute an adequate factual basis for the court's decision, because it merely states that Exemptions 6 and 7(C) apply to the redacted and withheld documents, and does not identify the withheld or redacted material. *See Wiener*, 943 F.2d at 978-79 (affidavits consisting of "boilerplate" descriptions that fail "to tailor the explanation to the specific document withheld" are insufficient).[5] However, the government also produced the entire unredacted Antonich report for the district court's in camera review. The report's "relative brevity" — it consisted of only twelve short attachments — made this case an "appropriate instance" for in camera inspection, like in *Church of Scientology*. 611 F.2d at 743. Unfortunately, it is unclear from the record whether the district court in fact reviewed the disputed documents in camera. The court did not reference any in camera review in its decision, and at oral argument the gov-

---

[5]While the Department of the Interior also produced a more detailed legal memorandum, the author of the memo did not provide the court with any affidavit or declaration.

ernment indicated that it did not believe the court had engaged in an in camera viewing.

**[8]** Nonetheless, we see no reason to remand in this particular case. The full record, including the entire Antonich report, was available to us on appeal, and we have carefully examined it. Based on our in camera review of the report and *de novo* review of the legal questions, we conclude that the district court reached the proper result, making remand for the district court's possible lack of adequate factual basis unnecessary. *See Schell v. Dep't of Health & Human Servs.*, 843 F.2d 933, 936-43 (6th Cir. 1988). We recognize, though, that such in camera review is discretionary and is to be rarely exercised. As the *Schell* court noted:

> [T]he FOIA affidavit submitted to the district court was too conclusory for a well-informed assessment of the applicability of [the exemption in question]. . . . It is only because we have exercised our discretion to review *in camera* the document that we are prepared to address this exemption. We caution that such review is rare, and should not be a substitute for a specific and detailed affidavit setting forth the reasons supporting nondisclosure.

*Id.* at 940 n.5.

### 2.   De novo *review of the FOIA Exemptions*

The FOIA reflects "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360-61 (1976) (quoting S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965)). Congress set forth nine categories of documents that are exempt from the FOIA's disclosure requirement. *Id.* at 361. In the instant case, the district court held that the government properly withheld the redacted information under Exemptions 6 and 7(C). We hold that the infor-

mation was properly withheld under Exemption 7(C), and do not reach whether it might also be protected under Exemption 6.

**[9]** Exemption 7(C) protects law enforcement records whose disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).**[6]** Because it requires the court "to protect, in the proper degree, the personal privacy of citizens against the uncontrolled release of information," the "usual rule that the citizen need not offer a reason for requesting the information must be inapplicable." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). Rather, the court must "balance the competing interests in privacy and disclosure." *Id.*

**[10]** We agree with the district court that Antonich has a privacy interest in the information withheld from Lane as the subject of "an [agency] investigation that could lead to [his] discipline or censure." *Hunt v. FBI*, 972 F.2d 286, 288 (9th Cir. 1992). The other NPS personnel interviewed or mentioned in the report also have a privacy interest in "not being associated unwarrantedly with alleged criminal activity." *Schiffer*, 78 F.3d at 1410; *see also Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998). That the public may be aware of the allegations against Antonich does not lessen his privacy interest, because notions of privacy in the FOIA exemption context encompass information already revealed to the public. *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 770 (1989); *Kimberlin*, 139 F.3d at 949; *Schiffer*, 78 F.3d at 1410-11.**[7]**

---

**[6]**Lane does not dispute that the Antonich report is a law enforcement record.

**[7]**Lane argues that Antonich has no privacy interest in the report because he has made statements on local news channels that he wants the report released. However, Lane presents no evidence of these purported statements, and even if Antonich consented to disclosure, "courts have long frowned upon the release of government compiled documents by individual consent." *Church of Scientology Int'l v. IRS*, 995 F.2d 916, 921 (9th Cir. 1993).

**[11]** Because the privacy interests of third parties have been established, Lane must show that "the public interest sought to be advanced is a significant one" and that "the information [sought] is likely to advance that interest." *Favish*, 541 U.S. at 172. As the district court found, Lane does not clearly articulate the public interest in the disclosure of the requested documents. The public interest may be in exposing the negligence of the government's investigation into Antonich, though it could also be in learning about Antonich's misconduct itself. In either case, the public interest is heightened because Antonich is a high level employee. *Hunt*, 972 F.2d at 289 (citing *Stern v. FBI*, 737 F.2d 84, 94 (D.C. Cir. 1984)). However, because the interest in disclosure derives from a government employee's negligence or misconduct, Lane must provide more than a "bare suspicion" of agency misconduct; rather, she must "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174.[8]

**[12]** We agree with the district court that Lane has failed to carry this burden. She has produced no evidence that the government acted negligently in investigating the June 11 incident beyond her own suggestion that the investigation was not sufficiently thorough. And while the recording of Antonich's statements at the July 11 meeting could theoretically "warrant a belief by a reasonable person" that Antonich himself engaged in improper behavior, *Favish*, 541 U.S. at 174, the court must look further than the specific reasons for Lane's request in evaluating the public interest in disclosure. Whether disclosure is warranted "must turn on the nature of the requested document and its relationship to the basic pur-

---

[8]Lane argues that she cannot meet this high standard without discovery. However, it is within the discretion of the district court to limit discovery in FOIA cases generally, *Simmons,* 796 F.2d at 711-12, and Lane cites no authority supporting a different standard in cases involving Exemption 7(C), which requires plaintiffs to provide some evidence of government misconduct.

pose of the [FOIA] to open agency action to the light of public scrutiny, rather than on the particular purpose for which the document is being requested." *Reporters Comm.*, 489 U.S. at 772 (internal citations omitted). That Lane only seeks the report of one isolated incident makes it highly unlikely that disclosure would increase public understanding of government activities, because the information she seeks will at most provide information about Antonich's actions on one day and the government's investigative procedures in this instance — it will reveal nothing about the activities of the agency as whole. *See Hunt*, 972 F.2d at 289 ("The single file sought by Hunt will not shed any light on whether all such FBI investigations are comprehensive or whether sexual misconduct by agents is common."); *see also Boyd v. Dep't of Justice*, 475 F.3d 381, 388 (D.C. Cir. 2007) ("[A] single instance of [government misconduct] . . . would not suffice to show a pattern of government wrongdoing . . . .").

**[13]** Thus, because the private interests of Antonich and others mentioned in the report outweigh the relatively low public interest in disclosure, we affirm the district court's ruling that Exemption 7(C) applies to protect the materials the government withheld from Lane.

## C.   Right of Access Privacy Act Claim

Lane argues that the government has not provided her with all of her personnel records pursuant to her Privacy Act request, and asks us to overturn the district court's summary judgment in the government's favor on this claim. We review *de novo* a grant of summary judgment in Privacy Act claims, *Louis v. Dep't of Labor*, 419 F.3d 970, 973 (9th Cir. 2005), and hold that the district court correctly concluded that the government conducted an adequate search for Lane's personnel files.

The Privacy Act governs the disclosure of, access to, and amendment of records on individuals that are maintained by

federal agencies. 5 U.S.C. § 552a. An individual may "gain access to his [or her] record" upon request, *id.* § 552a(d)(1), and a cause of action arises if an agency refuses to comply with a request, *id.* § 552a(g)(1)(B). Lane brought her action under this provision.

[14] In right of access cases, the government need not show that it produced every responsive document, but only that "the *search* for those documents was *adequate*." *Zemansky v. Env't Prot. Agency*, 767 F.2d 569, 571 (9th Cir. 1985) (emphasis in original) (quoting *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).[9] The search need only be reasonable, and the government may demonstrate that it undertook an adequate search by producing "reasonably detailed, nonconclusory affidavits submitted in good faith." *Id.*

[15] Here, the government produced the affidavit of FOIA agent Holly Bundock, which explains the search procedures she used, the staff members she contacted, the files and e-mails examined, the time spent on various searches, and the 577 pages of documents sent to Lane in response to her request. Notwithstanding the production of this detailed, good faith affidavit, the district court initially declined to grant summary judgment for the government on this claim. Based on information in Bundock's affidavit suggesting the existence of certain files pertaining to Lane at the Federal Law Enforcement Training Center, the court directed the government to search for additional documents at that location. Satisfied with government's secondary search, the district court granted summary judgment for the government.[10]

---

[9]*Zemansky* discussed the search burden in a FOIA case, but the same standard applies to Privacy Act cases. *See Hill v. U.S. Air Force*, 795 F.2d 1067, 1069 n.4 (D.C. Cir. 1986) (per curiam).

[10]A Training Center employee was quoted as stating that the Training Center keeps files on all law enforcement commissioned rangers which house receipts for guns and badges, law enforcement commissions, and training records.

No different result is warranted here. Lane contends the government's search of the Training Center was inadequate because it did not produce the files referenced in Bundock's declaration. Specifically, she faults the government for inquiring of the Department of Homeland Security rather than the custodian of the Training Center files in Glynco, Georgia. The record reveals, however, that the government requested from Document Manager Billy Spears at the Federal Law Enforcement Training Center, a division of the Department of Homeland Security in Glynco, Georgia, "all copies of records possessed by [the Training Center] concerning Melinda J. Lane." In response, Spears provided Lane's Training Center student file, which included Lane's transcript and registration, several exams, and training evaluations. Spears provided an affidavit stating that he was the custodian of Lane's student record from the Training Center, and a cover letter stating that all information responsive to the request was enclosed.

**[16]** Together, the government's original and secondary responses to Lane's Privacy Act request constitute an adequate search for Lane's files. The government's actions were "reasonably calculated to uncover all relevant documents," *Zemansky*, 767 F.2d at 571 (internal citations omitted), and it demonstrated the adequacy of its searches by producing two separate affidavits, which Lane does not allege are impugned by bad faith, *id.* We therefore affirm the district court on this claim.

### D. Improper Disclosure Privacy Act Claim

Lane argues that the district court erred in granting summary judgment in favor of the government on the improper disclosure claim because Hinson's view of her file violated the Privacy Act. Our *de novo* review, *Louis*, 419 F.3d at 973, reveals that Lane failed to present sufficient evidence to defeat summary judgment on this claim, and we affirm the district court.

**[17]** Lane alleges that Hinson's review of her Official Personnel file violated section 552a(b) of the Privacy Act, which prohibits disclosure of personnel files unless certain exceptions apply. 5 U.S.C. § 552a(b). An agency's improper disclosure gives rise to a cause of action if the Privacy Act violation caused an adverse effect and the violation was willful or intentional. 5 U.S.C. § 552a(g)(1)(D); *Quinn v. Stone*, 978 F.2d 126, 131 (3d Cir. 1992).[11] The district court did not decide whether Hinson's viewing of Lane's file in fact violated the Privacy Act, but instead found that Lane failed to "state a claim for damages" because she did not plead any adverse effect or allege willful intent in her Complaint or Response.

**[18]** We agree with the district court's approach. Lane has not provided evidence in her pleadings, depositions, answers to interrogatories, or affidavits to show willfulness or damages. Fed. R. Civ. P. 56(c). Lane points only to her attorney's statements at oral argument to establish that Hinson's purposeful, retaliatory viewing of her file resulted in the adverse consequence of the loss of her law enforcement commission. Her complaint arguably alleges willful conduct on Hinson's part, but that allegation is unsupported by evidence, and neither the complaint nor declaration assert that Hinson's viewing of her file resulted in an adverse effect.

**[19]** Lane's allegations in her complaint and her attorney's statements at oral argument are insufficient to defeat a summary judgment motion. Fed. R. Civ. P. 56(c); 56(e)(2). Moreover, her attempts to justify her lack of evidence — as due to the district court's denial of her discovery request and the government's failure to raise the issues of damages and willful intent until its reply brief — are not well taken. While it is true that the government did not raise the issues of damages

---

[11]The plaintiff must also establish that the information disclosed is a Privacy Act record and that the agency disclosed the information, *Quinn*, 978 F.2d at 131. These factors are not in dispute here.

or willful conduct until its reply to Lane's summary judgment response, a district court has the discretion to consider an argument first raised in a reply brief. *Glenn K. Jackson, Inc. v. Roe*, 273 F.3d 1192, 1201-02 (9th Cir. 2001). Further, Lane cannot complain of missed discovery opportunities in light of her failure to file a Rule 56(f) motion. *THI-Hawaii*, 627 F.2d at 994. Therefore, we affirm the district court on this claim.

## E.　*Refusal to seal Lane's documents*

[20] Last, Lane assigns error to the district court's denial of her motion to seal her personal records, which were part of the government's exhibits. In the district court, she unsuccessfully argued the records in question were protected by the Privacy Act. On appeal, she does not reargue the Privacy Act point, but for the first time contends that the documents "might . . . become a vehicle for improper purposes." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). The panel need not consider arguments not before the district court unless review is necessary to preserve the integrity of the judicial process, a new issue arose while the appeal was pending due to a change in the law, or the issue is purely one of law and does not depend on the factual record below. *Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985). None of these circumstances present themselves here. In any event, *Nixon* is inapposite — it involved reporters seeking permission to copy, sell and broadcast tapes from the *Nixon* trial, not a routine motion to seal records. 435 U.S. at 597-99. Accordingly, we affirm the district court on this claim as well.

## III.　CONCLUSION

We AFFIRM the district court.