# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

WILLIAM P. SHANNAHAN,
          *Plaintiff-Appellant,*

v.

INTERNAL REVENUE SERVICE, a
federal agency,
          *Defendant-Appellee.*

No. 10-35204

D.C. No.
2:08-cv-00560-JLR

WILLIAM P. SHANNAHAN,
          *Plaintiff-Appellant,*

v.

INTERNAL REVENUE SERVICE, a
federal agency,
          *Defendant-Appellee.*

No. 10-35244

D.C. No.
2:08-cv-00452-JLR

OPINION

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted
June 9, 2011—Seattle, Washington

Filed March 13, 2012

Before: Stephen Reinhardt, William A. Fletcher, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge William A. Fletcher

2955

## COUNSEL

Samuel Ryan Castic, David John Lenci, Michael K. Ryan, K&L GATES LLP, Seattle, Washington, for the appellant.

Randolph Lyons Hutter, Carmen M. Banerjee, Jonathan S. Cohen, Nicole Maria Elliott, UNITED STATES DEPART-MENT OF JUSTICE, Washington, D.C., Robert P. Brouil-

lard, OFFICE OF THE UNITED STATES ATTORNEY, Seattle, Washington, for the appellee.

---

**OPINION**

W. FLETCHER, Circuit Judge:

We are asked to decide whether appellants are entitled under the Freedom of Information Act ("FOIA") to disclosure of tax-related documents held by the Internal Revenue Service ("IRS"). The government resisted the disclosure of the documents on two grounds. First, it contended that disclosure of the documents would "seriously impair Federal tax administration" within the meaning of 26 U.S.C. § 6103(e)(7) and Exemption 3 of FOIA, 5 U.S.C. § 552(b)(3), and "could reasonably be expected to interfere with enforcement proceedings" within the meaning of Exception 7(A) of FOIA. *Id.* § 552(b)(7)(A). Second, it contended under the fugitive disentitlement doctrine that the Cheungs have no right to disclosure under FOIA, whether or not the documents qualify under an exemption.

The district court held that the documents are protected from disclosure under Exemptions 3 and 7(A). It did not reach the fugitive disentitlement question. We affirm, based on Exemptions 3 and 7(A). Like the district court, we do not reach the fugitive disentitlement question.

## I. Background

On January 28, 2003, Steven Cheung and Linda Su Cheung, husband and wife, were indicted on one count of conspiracy to defraud the United States. The Cheungs are United States citizens. The indictment charged that the Cheungs concealed their ownership of, and millions of dollars of income derived from, businesses owning commercial park-

ing lots in Hong Kong. Steven Cheung was charged in the same indictment with six counts of filing false or fraudulent income tax returns, five counts of filing false foreign bank account reports, and one count of failing to file a foreign bank account report. The indictment alleges that the Cheungs engaged in financial transactions in the United States, Hong Kong, the Marshall Islands, and the British Virgin Islands and "utilized a web of corporations and other entities" in those countries. When they lived in the United States, their principal residence was in Seattle, Washington.

Summonses were issued to the Cheungs in Seattle and Hong Kong and to their defense attorneys in Seattle. The Cheungs did not appear at their February 20, 2003, arraignment in district court. The court then issued warrants for their arrest. According to newspaper reports, Steven Cheung held a press conference in Hong Kong in which he "denounced" the indictment and the investigation. The United States Attorney's office in Seattle has reason to believe that the Cheungs are in Shanghai, China, and that they plan to stay in China indefinitely. China has no extradition treaty with the United States.

When the criminal proceeding stalled because of the Cheungs' fugitive status, the IRS initiated a civil examination of the Cheungs' income tax liability. The IRS does not ordinarily perform a civil examination while criminal proceedings are pending, but the IRS deviated from its standard practice because the Cheungs are fugitives. IRS Revenue Agent Ev Stone sent Form 4549-A Income Tax Discrepancy Adjustments to the Cheungs, assessing Steven Cheung about $9.5 million and Linda Cheung almost $8 million in back taxes, including penalties and interest. Form 4549-A is commonly referred to as a "Revenue Agent Report," or an "RAR."

Plaintiff William Shannahan is an attorney who represents the Cheungs, as well as two companies allegedly owned by the Cheungs, West Coast International Limited and West

Coast International (Parking) Limited ("the Entities"). Shannahan filed timely protest letters with the IRS on behalf of the Cheungs and the Entities. Shannahan asked for the documents on which the assessments were based "[i]n order to allow the Taxpayer[s] the opportunity to refute the adjustments in the RAR and to provide the Taxpayer[s] with fundamental due process." IRS Supervisory Agent Blake Becker responded in a letter in which he declined to provide the documents. Becker requested in his letter that the Cheungs "appear personally" and "testify under oath" in an interview at the IRS office in Seattle. The Cheungs did not appear for the interview.

Shannahan sent FOIA requests to the IRS on behalf of the Cheungs and the Entities. As to the request on behalf of the Cheungs, the IRS informed Shannahan that it had located 2,932 pages of responsive documents but denied his request based on FOIA Exemptions 3, 5, 7(A), 7(D), and 7(E). As to the request on behalf of the Entities, the IRS informed Shannahan that it located 40 boxes of responsive documents but denied his request based on FOIA Exemptions 3, 5, 7(A), and 7(D). Shannahan appealed the denial to the IRS appeals division. The IRS denied the appeal on the ground that the Cheungs were "fugitives from justice." Shannahan then filed four separate complaints in his own name in district court, two on behalf of the Cheungs and two on behalf of the Entities, seeking disclosure under FOIA. (The Defendants have not made an objection that the Entities are not taxpayers under 26 U.S.C. § 6103(c).) The district court consolidated the complaints into two cases, one for the FOIA claims brought on behalf of the Cheungs and one for the claims filed on behalf of the Entities. After receipt of the complaints, the IRS identified 5,735 pages of documents and a 35.7 MB electronic database responsive to the complaints. On October 28, 2008, the IRS sent Shannahan ten documents comprising 318 pages. It withheld the remaining 5,417 pages and the electronic database.

The IRS moved for summary judgment in both cases. It argued that the withheld documents were exempt from disclosure under, *inter alia*, Exemptions 3 and 7(A) of FOIA. 5 U.S.C. §§ 552(b)(3), 552(b)(7)(A). Exemption 3 exempts from disclosure documents that are "specifically exempted . . . by statute." The relevant statute in this case is § 6103(a) of the Internal Revenue Code, which characterizes "returns and return information" as "confidential," subject to certain exceptions. 26 U.S.C. § 6103(a). One of the exceptions to confidentiality is disclosure to the taxpayer, but only "if the Secretary determines that such disclosure would not seriously impair Federal tax administration." *Id.* at § 6103(e)(7). *See also Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995). Exemption 7(A) exempts from FOIA disclosure records or information compiled for "law enforcement purposes, but only to the extent that the production . . . could reasonably be expected to interfere with enforcement proceedings." The IRS also argued that the suits should be dismissed under the fugitive disentitlement doctrine. *See*, *e.g.*, *Degen v. United States*, 517 U.S. 820 (1996); *Sun v. Mukasey*, 555 F.3d 802 (9th Cir. 2009).

The IRS supported its motion with four declarations. The first was by Janet Freeman, an Assistant U.S. Attorney who had been assigned to the criminal investigation and prosecution of the Cheungs. Freeman described a number of documents responsive to Shannahan's FOIA request that were in the possession of the U.S. Attorney's office. Among them were 29 boxes of documents provided by Hong Kong to the United States pursuant to a mutual legal assistance agreement ("MLAA"). There is no standing tax treaty providing for information exchanges between the United States and Hong Kong. Instead, the United States must enter into a new agreement, specific to each criminal tax investigation, for any exchange of information. In addition, she reported finding 42 boxes of files related to the grand jury investigation and 16 boxes of "work product connected to the criminal investigation."

The second declaration was by Deborah Neyhart, a Special Agent for Criminal Investigations in the Seattle office of the IRS. Neyhart described a 2,722-page Special Agent Report ("SAR") prepared by now-retired Special Agent Molly Mahoney in connection with the criminal investigation of the Cheungs. The SAR contained a description of the criminal offenses recommended for prosecution, along with a description of the supporting evidence, a witness list, and a summary of anticipated testimony.

The third declaration was by Caesar White, the Supervisory Special Agent for Criminal Investigations in the Seattle office of the IRS. White described five categories of documents responsive to Shannahan's FOIA request: "examination workpapers," "agent's working papers," "interview notes, third party contacts and contact sheets," "internal correspondence," and the "electronic database." White stated that disclosure of any documents in these categories would "seriously impair federal tax administration" because it (1) "would allow the Cheungs to determine the nature, direction, scope, and limits of the criminal proceedings, and the strategies and theories being utilized by the government"; (2) "would allow the Cheungs earlier and greater access to information about the proceedings than they would otherwise be entitled to receive"; (3) "could enable the Cheungs to craft explanations or defenses based upon the government's analysis;" and (4) "could enable the Cheungs to conceal or disguise income, or take other steps to avoid having income attributed to them."

The fourth declaration was by Meghan Mahaney, an attorney in the IRS's Office of Chief Counsel, Procedure and Administration. Mahaney described the search that had been performed to locate documents responsive to Shannahan's request. She stated that 5,735 pages of responsive documents had been found. These documents were described, as discussed above, by the other declarants. She stated that of the 5,735 pages, the IRS had released 318 pages to Shannahan. The IRS had withheld the remaining 5,417 pages of docu-

ments pursuant to, *inter alia*, Exemptions 3 and 7(A). Mahaney divided these documents into the five categories described in the White declaration. She stated that the IRS was withholding 42 pages of examination workpapers; 5,280 pages of agents' working papers; 88 pages of interview notes, third party contacts, and contact sheets; seven pages of internal correspondence; and the entire electronic database.

The court denied the motion for summary judgment in both cases. *Shannahan v. IRS*, 637 F. Supp. 2d 902, 908 (W.D. Wash. 2009). It found that the IRS had failed to show that the withheld documents qualified as "return information" within the meaning of § 6103 and Exemption 3, *id.* at 916, and had failed to show a sufficient connection between the withheld documents and the claimed interference with enforcement proceedings within the meaning of Exemption 7(A). *Id.* at 920. The court ordered the IRS to provide a *Vaughn* index of a representative sampling of documents for each of the five categories, including at least 500 pages of documents, that would "(1) [ ] identify each document withheld; (2) state the statutory exemption claimed; and (3) explain how disclosure would damage the interests protected by the claimed exemption." *Id.* at 923. *See also Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1326 n.1 (9th Cir. 1995); *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). The court declined to reach the question of fugitive disentitlement. *Shannahan*, 637 F. Supp. 2d at 923.

In response to the court's order, the IRS filed a second declaration by Mahaney, 38 pages of which were a *Vaughn* index. Mahaney stated that during her further review she had discovered 24 additional pages of documents that would be disclosed, in redacted form, to Shannahan. She then described withheld documents falling into the five categories. She specifically described three examples of examination workpapers; 18 examples of agents' working papers; one example of notes of an interview with a third party; and one example of IRS internal correspondence. She also described the elec-

tronic database. As to each specifically described document and the database, Mahaney explained the basis for her conclusion that they were exempt from disclosure under FOIA.

The district court then granted partial summary judgment in both cases. With respect to documents not specifically described by Mahaney in her *Vaughn* index, the court denied summary judgment. The court held that Mahaney had not sufficiently explained how she had selected the documents she described and had not sufficiently shown that they were representative of the rest of the documents. The court also denied summary judgment as to the electronic database because it did not have "adequate information upon which to identify potentially exempt files."

With respect to documents specifically described in the *Vaughn* index, the court granted summary judgment under Exemptions 3 and 7(A) as to all the documents that had been prepared by the IRS or other governmental agencies. The court held that Mahaney had shown that these documents contained "return information" within the meaning of § 1603(a) and Exemption 3. It also held that White had provided a sufficient basis to conclude that disclosure of these documents would cause harm within the meaning of Exemptions 3 and 7(A). Finally, it held that Mahaney had provided sufficient information to justify the IRS's conclusion that these documents could not reasonably be segregated from non-exempt information. However, the court denied summary judgment as to specifically described documents that had been prepared by third parties, holding that there had not been a sufficient showing that disclosure of these documents would cause harm.

In response, the IRS filed a third declaration from Mahaney and a declaration from IRS Special Agent Steven Bellis. Mahaney described the method by which she had chosen what she deemed to be representative documents and explained why disclosure of documents and information from third par-

ties would be harmful. She further explained why the non-exempt material could not reasonably be segregated from exempt documents.

Bellis described three categories of documents and information obtained from third parties. First, some documents were provided, on a confidential basis, pursuant to the MLAA with Hong Kong. Bellis declared that disclosure of these documents would violate the terms of the MLAA and "would place at risk the government's future ability to obtain information from the Hong Kong government in criminal investigations." Second, one or more confidential informants provided documents and information to the IRS. Bellis stated that disclosure of information provided by confidential informants would help the Cheungs discover their identity. Disclosure would thus discourage any informants from cooperating further and would expose them to a risk of harm. Third, some third-party documents were provided to the IRS by non-confidential informants pursuant to subpoenas. Bellis stated that disclosing those documents would reveal to the Cheungs the "scope of the government's investigation" and might allow the Cheungs to infer the identity of any confidential informants. Bellis also explained the nature of the electronic database and described the harm its disclosure would cause.

The district court then granted summary judgment in both cases. It held that the entirety of the responsive documents, as well as the electronic database, were properly withheld under FOIA Exemptions 3 and 7(A). *Shannahan v. IRS*, 680 F. Supp. 2d 1270, 1272 (W.D. Wash. 2010). Shannahan timely appealed in both cases.

## II.   Standard of Review

We review summary judgment in a FOIA case in a two-step process. First, we decide *de novo* if the district court's ruling was supported by an adequate factual basis. *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1149 (9th Cir.

2008). If so, we review "the district court's conclusions of fact . . . for clear error, while legal rulings, including its decision that a particular exemption applies, are reviewed *de novo*." *Lane v. Dep't of Interior*, 523 F.3d 1128, 1135 (9th Cir. 2008). We review *de novo* the adequacy of a *Vaughn* index. *Wiener v. FBI*, 943 F.2d 972, 978 (9th Cir. 1991). We review a denial of discovery for abuse of discretion. *Lane*, 523 F.3d at 1134.

## III.   Discussion

"'[D]isclosure, not secrecy, is the dominant objective' " of FOIA. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7-8 (2001) (*quoting Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). We construe narrowly FOIA's nine exemptions. *Id* at 8. The purpose of FOIA is to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (*quoting NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). The government bears the burden of demonstrating that an exemption applies. *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009). To justify withholding, the government must provide tailored reasons in response to a FOIA request. It may not respond with boilerplate or conclusory statements. *Wiener*, 943 F.2d at 978-79. We accord substantial weight to an agency's declarations regarding the application of a FOIA exemption. *Hunt v. CIA*, 981 F.2d 1116, 1119-20 (9th Cir. 1992).

**[1]** The question under Exemption 3 is whether the Secretary properly determined that disclosure of documents to Shannahan, acting on behalf of the Cheungs, would "seriously impair Federal tax administration." 26 U.S.C. § 6103(a), (e)(7); 5 U.S.C. § 552(b)(3). "Tax administration" is defined broadly in the statute. It "means . . . the administration, management, conduct, direction, and supervision of the execution

and application of the internal revenue laws or related statutes . . . and tax conventions to which the United States is a party, and . . . the development and formulation of Federal tax policy . . . ." 26 U.S.C. § 6103(b)(4)(A). It "includes assessment, collection, enforcement, [and] litigation . . . under such laws, statutes, or conventions." § 1603(b)(4)(B).

**[2]** "Seriously impair" is not defined in the statute, but it has been construed broadly. In *Lewis v. IRS*, 823 F.2d 375, 377 (9th Cir. 1987), the taxpayer sought documents relevant to a criminal tax investigation. The IRS refused to disclose the documents, relying on Exemptions 3 and 7(A). *Id.* at 377 & n.2. According to an affidavit filed by an IRS official,

> [d]isclosure of the documents . . . would interfere with the current Service investigation of the plaintiff by prematurely revealing the evidence developed against the plaintiff; the reliance placed by the government on that evidence; the names of witnesses and potential witnesses; the scope and limits of the investigation; the identities of third parties contacted; the specific transactions being investigated; [and] the strengths and weaknesses of the government's case . . . . In addition, disclosure could aid plaintiff in tampering with potential evidence and witnesses, or otherwise frustrat[e] the government's ability to present its best case in court.

*Id.* at 378 n.5. Addressing but not specifically citing Exemption 3, we wrote that the affidavit sufficiently showed "why disclosure would impair the IRS's investigation of Lewis for criminal tax violations." *Id.* at 378.

In *Chamberlain v. Kurtz*, 589 F.2d 827, 841 (5th Cir. 1979), the Fifth Circuit held, similarly:

> [T]he IRS has sustained its burden by demonstrating that the release of the documents would result in

serious impairment of the effort to collect back taxes and penalties from Chamberlain. Virtually all of the documents sought discuss either the facts or law relating to the fraud claim against Chamberlain or the computation of tax deficiencies for the years 1962 to 1968. Release of this information would doubtless be of benefit to him in the preparation of his defense to the various claims against him. Subsections 6103(c) and (e)(6)[1] were designed precisely to avoid the damage to tax collection that would result from the untimely disclosure of the IRS' files[.]

Finally, in *Linsteadt v. IRS*, 729 F.2d 998, 1003 (5th Cir. 1984), the IRS withheld portions of a memorandum of an IRS interview with taxpayers who were the subjects of criminal and civil tax investigations. The withheld portions "contained only a factual summary of the Linsteadts' statements, and did not include any conclusions or opinions of the Special Agent who took the statements." *Id.* at 1004. IRS officials provided affidavits describing the effect disclosure would have:

Any such disclosure would impair the Service's ability to present its best case in court should [taxpayers] ultimately be indicted or in any future criminal or civil litigation involving plaintiffs . . . by prematurely revealing evidence; the reliance placed by the government on that evidence; the nature and direction of the government's case; and the scope and limits of the investigation. In addition, disclosure would aid plaintiffs in tampering with potential evidence or otherwise frustrate the continuing investigative process.

---

[1]Subsections 6103(c) and (e)(6) then contained the language that is now contained in § 6103(e)(7)—"if the Secretary determines that such disclosure *would seriously impair Federal tax administration*." *See Chamberlain*, 589 F.2d at 836 n.26 (emphasis added).

*Id.* at 1004 n.10 (affidavit of Deputy Director of IRS for the Dallas District); *see also id.* (affidavit of Special Agent assigned to taxpayers' case, stating essentially the same thing). The court in *Linsteadt* affirmed the district court's holding that the portions had been properly withheld under § 6103 and Exemption 3. *Id.* at 1005.

**[3]** The question under Exemption 7(A) is whether disclosure of the documents "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552 (b)(7)(A). In *NLRB v. Robbins Tire & Rubber Company*, 437 U.S. 214 (1978), the Supreme Court explained the purpose of Exemption 7(A):

> In originally enacting Exemption 7, Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigation or placed at a disadvantage when it came time to present their case. Foremost among the purposes of this Exemption was *to prevent harm to the Government's case in court.*

*Id.* at 224 (emphasis added; citation and internal quotations omitted). Robbins Tires invoked FOIA to obtain witness statements the NLRB had collected prior to a hearing on an unfair labor practice complaint. *Id.* at 216. The Court held that the statements were properly withheld because disclosing the statements would have given Robbins Tires advance access to the government's case. *Id.* at 236-37, 240. This access would have allowed Robbins Tires to "coerce or intimidate employees who have given statements, in an effort to make them change their testimony or not testify at all." *Id.* at 239. It would also have allowed a "suspected violator" to "construct defenses which would permit violations to go unremedied." *Id.* at 241 (citation and internal quotations omitted).

**[4]** In *Lewis*, we held that the IRS properly relied on Exemption 7(A) in refusing to disclose documents connected to its criminal tax investigation:

> Under Exemption 7(A) the government is not required to make a specific factual showing with respect to each withheld document that disclosure would *actually interfere* with a particular enforcement proceeding. The IRS need only make a general showing that disclosure of its investigatory records would interfere with its enforcement proceedings. Congress intended that Exemption 7(A) would allow the federal courts to determine that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally interfere with enforcement proceedings.

823 F.2d at 380 (emphasis in original; citation and internal quotations omitted).

**[2]** The district court in this case properly relied on both Exemptions 3 and 7(A) in upholding the IRS's refusal to disclose the documents and electronic database. The court was meticulous. It required the preparation of a *Vaughn* index of representative documents. *Compare Lion Raisins v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004) ("Ordinarily, the government must submit detailed public affidavits identifying the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption. This submission is commonly referred to as a 'Vaughn' index." (internal citations omitted)) *with Lewis*, 823 F.2d at 380 ("When, as is the case here, a claimed FOIA exemption is based on a general exclusion, such as Exemption 7(A)'s criminal investigation exclusion, which is dependent on the category of the requested records rather than the individual subject matters contained within each document, a *Vaughn* index is futile.").

It subsequently insisted on an explanation of how the documents were selected, in order to ensure that the documents in the index were truly representative. Finally, it insisted on evidence about, and explanation of, the harm that would be caused by the release of two kinds of documents—those prepared by the IRS and other government agencies, and those obtained from third parties. *See Chamberlain*, 589 F.2d at 840-42. It insisted on an appropriate explanation for why the exempt documents could not reasonably be segregated from non-exempt material. *See Pac. Fisheries,* 539 F.3d at 1148.

**[6]** FOIA is not designed "as a substitute for civil discovery." *Baldride v. Shapiro*, 455 U.S. 345, 360 n.14 (1982). The fact that the Cheungs wish to use the documents they seek in their civil tax proceeding does not make Exemptions 3 and 7(A) inapplicable. Indeed, it is precisely because of the uses to which the Cheungs might put the documents that the exemptions are applicable. The district court properly denied Shannahan's discovery requests for information concerning the nature and origins of documents he requested. *See Lane*, 523 F.3d at 1134 (holding that in FOIA cases "discovery is limited because the underlying case revolves around the propriety of revealing certain documents").

The Cheungs' problem is partly of their own making. They were indicted for tax-related crimes—conspiracy to commit tax fraud (both Cheungs), filing fraudulent income tax returns (Steven Cheung), filing false foreign bank account reports (Steven Cheung), and failing to file a foreign bank account report (Steven Cheung). Instead of defending against the criminal charges, the Cheungs fled the United States. It appears that they are now in China, which has no extradition treaty with the United States.

If the Cheungs had stayed in the United States and defended against the charges, the IRS would likely have gone forward with the criminal case before instituting any civil tax proceedings, in accordance with its usual procedure. Once the

Cheungs' criminal proceedings were complete, the Cheungs would have had access to some of the documents they now seek, either because they would have received the documents during the criminal proceedings or because the harm of disclosing the documents would have been vitiated by the conclusion of those proceedings. But here the criminal proceedings have not taken place because the Cheungs have fled, and they must live with the consequences.

## Conclusion

**[7]** For the foregoing reasons, we hold under Exemptions 3 and 7(A) that the district court was correct to uphold the IRS's refusal to disclose the tax-related documents sought by the Cheungs.

**AFFIRMED.**